# Staunton

Roy Hair, Jr. v. City of Lynchburg.

September 19, 1935.

Present, Campbell, C. J., and Holt, Hudgins, Gregory, Browning and Chinn, JJ.

The opinion states the case.

*B. B. Campbell,* for the plaintiff in error.

*T. G. Hobbs* and *S. V. Kemp,* for the defendant in error.

CHINN, J., delivered the opinion of the court.

This suit was brought by Roy Hair, Jr., to recover damages for injuries sustained by him in diving from a

diving board at a public swimming pool maintained and operated by the city of Lynchburg in one of its recreational parks, upon the ground that the said injuries were caused by the negligence of said city in the maintenance and operation of the pool. After the evidence was all in, the defendant city moved the court to strike all of the plaintiffs evidence on the following grounds:

First: That in the operation and maintenance of the swimming pool, the city of Lynchburg was exercising a governmental function and, therefore, not liable for any negligence in the construction, maintenance, or operation of said swimming pool.

Second: That the evidence failed to show any negligence or lack of due care on the part of the said city which was the proximate cause of the plaintiff's injuries.

Third: That the plaintiff was guilty of contributory negligence.

The court below, without passing on the question presented in the first ground of the motion, sustained the motion on the last two grounds; whereupon the jury returned a verdict for the city, and judgment was entered accordingly.

It appears that the pool in question was constructed by the city in 1921, and has been operated as a public swimming pool each summer since that time. The pool has the necessary bath house, diving board, and other accessories, and the city employs the usual attendants necessary for the operation of a public swimming pool, including two life guards who are always on duty while the pool is being used. It is supplied with water from the city water system, and a fee of ten cents is charged each person who desires to enter the pool. The diving board referred to is located at one end of the pool, and at the time of the accident complained of was eleven feet ten inches above the surface of the water; and the water for a considerable area in front of and under the diving board was seven feet eleven inches deep. From this area the bottom of the pool sloped gradually upward to the shallow end of the

pool where it is said the minimum depth was only two feet.

Roy Hair, Jr., a resident of Florida, who in the summer of 1931 was spending his vacation near the city, came to the park and entered the pool on three occasions. The first time, according to his testimony, he did no swimming or diving, but merely waded around in the shallow part of the pool. On the second occasion, he spent about forty-five minutes swimming in the deeper part of the pool, and dived a number of times from the diving board, several times making the same dive in which he was later injured. On the third occasion he came with friends, and they were in the pool swimming and diving for some twenty-five minutes before the accident took place.

He was at the time of the accident twenty-five years old, was an experienced swimmer and diver, and weighed 180 pounds. The injury occurred in making from the diving board what is called a "one and a half" dive. This dive is executed by springing forward from the diving board, making one and a half revolutions in the air, and entering the water head foremost. In making this dive the diver endeavors to so time his revolutions as to enter the water with his body in a practically vertical position. When he goes in straight down it is termed among expert divers as a *"perfect* one and a half."

On this occasion Hair executed the dive in the above manner and continued to the bottom of the pool until he struck the top of his head with such force as to fracture two vertebrae in his neck. As a result he was at once totally paralyzed from his neck down.

It is contended by the plaintiff that the city was negligent in maintaining a diving board nearly twelve feet high over water approximately only eight feet deep, and much evidence was taken as to the location of diving boards and the depth of water in other public pools, from which it appears that while there are no fixed rules on the subject, and it is generally recommended that a diving board twelve feet high should be located over water of greater

depth than that in the instant case, it is shown by the evidence of the plaintiff's own witnesses that it is not an unusual thing to find that other such pools have similar conditions as to the depth of water and height of the diving board as existed in the Lynchburg pool at the time of the accident.

The alleged negligence of the city in relation to the elevation of the diving board and the depth of the water is not, however, really relied upon by the plaintiff as ground for recovery. In fact these conditions seem to have little to do with plaintiff's injury, for the reason that it appears from his own testimony, as well as that of his expert witnesses, that the depth to which the diver descends in making a "one and a half" dive depends upon not only how high he springs in the air from the diving board, if he does so at all, but especially upon the angle at which he enters the water. It is shown that dives are frequently made at the pool, at an angle, from a height of twenty-five to thirty feet, and it is testified by plaintiff's witnesses that in executing a *perfect* "one and a half" the diver will go to the bottom in water of much greater depth than that which existed in the Lynchburg pool, unless he uses his hand after his body becomes submerged to "flatten out" and plane to the surface, which is done by experienced and careful divers, regardless of the depth of the water.

It appears that the bottom of the pool in question is constructed of several inches of cement laid over rough stone. The pool is emptied of water each fall after the bathing season and remains empty all the winter, and due to the exposure to the cold the concrete frequently cracks and scales off in places, making it necessary, before the pool is filled for use in the spring, to repair the bottom by replacing the concrete where it is broken, which left the bottom in some places uneven and rough.

The plaintiff claims that on the occasion of his accident he caught on his hands when he reached the bottom, and if the bottom had been smooth his hands would have glided along the bottom and prevented his head from

striking, but due to the unevenness his arms "folded back," causing his head to strike. In other words the plaintiff attributes his injuries not to the depth of the water and the height of the diving board but to the condition of the bottom of the pool.

It is testified by the plaintiff and some of his expert witnesses that if the bottom had been perfectly smooth or made of glazed tile his hands would have slid along the bottom and prevented him from being hurt.

It is shown by the evidence, however, that, although the pool had been in operation from the year of its construction, 1921, until the time of the plaintiff's accident in July, 1931, and thereafter until the trial of the case in the court below in December, 1933, that it was patronized by an average of more than 15,000 people during the swimming season of each year, and that the "one and a half" and other fancy dives had been made innumerable times from the same diving board, there had been no accident except on one occasion a drunken man was slightly hurt, and on another a boy who was learning to swim hurt himself slightly in some way. These facts, of themselves, seem to us to constitute indisputable proof that the construction and the operation of the pool was reasonably safe for those who exercised a like degree of care in making use thereof, which is all that could be expected or required of the municipality under the circumstances. *City of Roanoke* v. *Sutherland,* 159 Va. 749, 167 S. E. 243; *City of Richmond* v. *Lambert,* 111 Va. 174, 68 S. E. 276, 28 L. R. A. (N. S.) 380.

It is fundamental that one is not responsible for consequences which are merely possible, but only for those which are probable according to ordinary and usual experience.

In the case of *Wyatt* v. *Telephone Co.,* 158 Va. 470, 163 S. E. 370, 373, 82 A. L. R. 386, this court said: "Probable consequences are to be anticipated and not those which are merely possible." And quotes from 22 R. C. L. 124 as follows:

■ "In accordance with the test of responsibility above set forth, it has been held in many cases that a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. The natural and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again. The possible consequences are those which happen so infrequently that they are not expected to happen again. A man's responsibility for his negligence must end somewhere. As has been well said: 'One is bound to anticipate and provide against what usually happens and what is likely to happen; but it would impose too heavy a responsibility to hold him bound in like manner to guard against what is unusual and unlikely to happen, or what, as it is sometimes said, is only remotely and slightly probable.' "

■ Considering the degree of care with which the city was properly chargeable in the construction, maintenance, and operation of the swimming pool in question, we find no evidence in the record to sustain the plaintiff's claim that the city was negligent in these respects. We do not think it was its duty to provide a tile or glazed bottom for this outdoor pool, nor can it be held liable as an insurer against possible accident.

■ Even though, however, it could be said that there was negligence on the part of the city in reference to the condition of the bottom of the pool, or the height of the diving board above the water, or the depth of water, or in any other respect, we think it clear from the testimony of the plaintiff himself, as well as from that of his own witnesses, that his own negligence proximately contributed to the injuries sustained.

As previously said, the plaintiff testified that he frequently went all the way to the bottom in executing the "one and a half" dive, and when he did so depended on the smoothness of the bottom to enable him to prevent

striking his head, and that it was due to the unevenness of the bottom that his hands failed to slip, causing his head to strike with such force as to produce the serious consequences resulting.

The plaintiff also testified that he had visited the pool on two other occasions, the first time wading around on the bottom of the shallow parts of the pool, and the second time swimming in deeper water and diving from the same diving board from which he made the unfortunate plunge, and even executing the same dive that proved so disastrous to him, although he did not go to the bottom on any of these occasions.

In view of these facts we do not see how we can escape the conclusion that the plaintiff knew the construction of the swimming pool, and that the bottom was made of cement and rough in places. Assuming that he did not have actual knowledge of the exact condition of the bottom of the pool, it must be assumed from the facts that he had sufficient knowledge to put him on guard or inquiry as to its condition, and he must in consequence be charged with negligence in depending upon the smoothness of the bottom to prevent any injury that might occur when he went to the bottom in executing his "one and a half" dive. If, moreover, the height of the diving board and depth of the water under it can be held as the proximate cause of the plaintiff's injury, and he had not ascertained the depth of the water when he dived from the board on the previous occasions, we think it is clear that plaintiff was guilty of a reckless disregard for his own safety when he undertook to execute a dive which he says himself frequently carried him to the bottom of the pool in water ten feet or more deep, without having made any inquiry of the life guards and attendants at the pool as to the depth of the water under the diving board. Taking plaintiff's evidence as a whole it seems clear that the safety of the diver in executing the "one and a half" and other fancy dives in a public swimming pool altogether depends

upon the skill of the diver and the exercise of ordinary care on his part.

After a careful examination of the record, and consideration of the briefs of counsel, we are forced to the conclusion that the trial court was right in striking the evidence on the grounds it did, and the plaintiff is therefore without legal right to recover of the city compensation for the deplorable accident he has sustained. The judgment of the trial court is therefore affirmed.

*Affirmed.*