# Wytheville

ROANOKE RAILWAY & ELECTRIC COMPANY V.
ANNIE B. WHITNER.

June 12, 1939.

Record No. 2069.

Present, Campbell, C. J., and Holt, Hudgins, Browning, Eggleston
and Spratley, JJ.

The opinion states the case.

*Woods, Chitwood, Coxe, Rogers & Muse* and *Kime & Hoback,* for the plaintiff in error.

*Showalter, Parsons, Kuyk & Staples,* for the defendant in error Marion E. Chapman.

(No appearance for the defendant in error Annie B. Whitner.)

HOLT, J., delivered the opinion of the court.

Under review is a judgment for a plaintiff given in compensation for personal injuries received in an automobile accident.

She, Annie B. Whitner, with a Miss Sloan, rode as a guest in a Packard coupe owned and driven by Marion E. Chapman. This coupe ran into the back end of a bus owned and operated by the Roanoke Railway & Electric Company, which was then standing on what is known in the record as the Williamson road, leading north through the outskirts of the city of Roanoke. This road is practically straight. Its paved surface is thirty feet wide and is divided by white lines into three ten-foot lanes. That to the right, going north, is for northbound traffic. The middle lane is for passing purposes. Defendant's bus is 27 feet long, 10 feet high, and 8 feet wide. It was driven by K. E. Richardson and on it were three passengers, Robert H. Waldron, R. L. Meador and James Thompson. There were the usual inside lights, and on its rear were three large red lights and a tail light. It carried also another red light, which came on when brakes were applied but which had nothing printed thereon to indicate a purpose to stop. Estimates as to speed vary from 15 to 40 miles an hour. Mrs. Whitner puts it at from 35 to 40 miles. She also said that the Packard in which she was riding and which followed was moving at about the speed of the bus. As the bus approached John street, an inter-

section street, it slowed down to let off a passenger and to take on one who indicated his desire to come aboard.

■ Code, section 2154(133), provides that no bus shall stop on the traveled portion of any highway outside of cities except where it can not with safety leave the traveled portion of the highway. This provision is for the safety and convenience both of passengers and of the public generally.

Code, section 2154(122), declares that a purpose to stop should be made plain by a signal of the hand or arm.

Code, section 2154(119), also declares that one motor vehicle shall not follow another more closely than is reasonable and prudent.

The Packard struck the bus with such force that two of its passengers were thrown from their seats while it was by the impact moved forward about 10 feet. This accident occurred at about nine-thirty at night.

Mrs. Carl Wilson, a witness for the plaintiff, said that the car, after the accident, stood close to the sidewalk.

H. C. Hamblin, deputy sheriff for Roanoke county, said that it stood right behind the bus.

■ From the bill for repairs to the car it appears that a new right fender was supplied, the left was straightened and refinished, and a new radiator was put in to replace the old one which had been crushed, all of which fairly leads to the conclusion that the Packard car was driven head on into the standing bus. It could not have been moved forward 10 feet by a glancing blow from a light car. The jury must have thought that Chapman was grossly negligent for it could not otherwise have given a verdict for a guest. *Boggs* v. *Plybon,* 157 Va. 30, 160 S. E. 77.

It first found:

"We, the jury, find for the plaintiff and fix the damages at $7,000.00, divided $2,000.00 paid by the Roanoke Railway and Electric Company and $5,000.00 by Marion E. Chapman."

Since Chapman and the bus company were sued as joint tort feasors, the court could not accept it and said:

"You can not apportion or divide the amount of your damages between the two defendants."

Thereupon the jury again retired and after a time returned into court with the following verdict:

"We, the jury, find for the plaintiff and fix the damages at $7,000.00 against both defendants."

While the verdict as first returned did not conform to Virginia law, it does tell us what the jury thought.

Both Chapman and the bus company applied for writs of error. Chapman's petition was denied, that of the bus company was granted.

This court also must have thought that Chapman's negligence was gross.

■ Accepting as true evidence for the plaintiff which sustains her verdict, we are of opinion that the bus company also was negligent in that it stopped upon the paved surface of the highway and gave no signal by arm or hand of its purpose.

Plaintiff did not call Miss Sloan as a witness, and in explanation thereof counsel said that she was suffering from "traumatic amnesia." Nor did she call Chapman as a witness. It is true that when he was put upon the stand to contradict a statement made by Mr. Layman the court then gave to defendant's counsel the right to examine him as an adverse witness. But that right he was unwilling to exercise. Chapman's failure to testify is thus explained by his counsel:

"When the court remembers that the plaintiff was practically his foster mother, the court will properly appreciate their reticence and ours in questioning him more closely than was necessary."

That is to say, Mrs. Whitner did not wish to embarrass Chapman, and Chapman did not wish to embarrass Mrs. Whitner, although she was anxious to secure a joint judgment. Whatever may have been the reasons governing him in failing to testify against the plaintiff, there is no reason why he should not have shown that the fault lay with the bus company, not with him. Indeed the record discloses that

he introduced no witnesses at all, except a mechanic who repaired his car. So far as Mrs. Whitner was concerned, his case practically went by default. But he was interested in showing that the accident was due to the negligence of the bus driver or that his negligence was at least a contributing cause. That is the case made by this record, and if facts within his knowledge sustained his contention, he had every reason to present them. The rule applicable in such a case is well settled.

"When a defendant can, by his own testimony, throw light upon matters at issue necessary to his defense and peculiarly within his own knowledge if the fact exists, and fails to go upon the witness stand, the presumption is raised and will be given effect to, that the facts do not exist." *Bastrop State Bank* v. *Levy,* 106 La. 586, 31 So. 164, 165, cited with approval in *Copperthite* v. *Loudoun Nat. Bank,* 111 Va. 70, 68 S. E. 392, and restated in *Sadler* v. *Marsden,* 160 Va. 392, 168 S. E. 357.

If Chapman knew why the burden of the accident should in justice rest upon the bus company and not upon himself or upon the bus company and himself, and not upon himself alone, it was his duty to then speak or forever after hold his peace.

We have seen that the bus company was negligent, but a defendant's negligence, of itself, will not support a verdict. It must have contributed to the accident. *Kinsey* v. *Brugh,* 157 Va. 407, 161 S. E. 41; *Pratt* v. *Miles,* 166 Va. 478, 186 S. E. 27.

An intervening cause which breaks the chain of causation becomes the sole proximate cause and supersedes the antecedent negligence of a defendant.

This rule is well stated in *Craver* v. *Franklin Cotton Mills,* 196 N. C. 330, 145 S. E. 570, 571:

"Accepting the familiar definition of proximate cause as that which in natural and continuous sequence, unbroken by any new and independent cause, produces an event, we must keep in mind the other principle that, when an independent, efficient, and wrongful cause intervenes between

the original wrongful act and the injury ultimately suffered, the former, and not the latter, is deemed the proximate cause of the injury. While there may be more than one proximate cause, that which is new and entirely independent breaks the sequence of events, and insulates the original or primary negligence.

Chapman did not see because he was blinded by some oncoming light but because he was not looking. Mrs. Whitner testified:

"Q. Any way, the driver of your car wasn't paying any attention, was he, because you told us you first realized your car or the car you were in was going to crash into the rear of the bus?

"A. Yes, and I screamed at him.

"Q. At the time you crashed, immediately before, you were going, as near as you can put it, at between 38 and 40 miles an hour at night time?

"A. I think so, as near as I can judge."

Mrs. Whitner also was inattentive. She screamed when she saw that a collision was almost upon her, but it was then too late. If these people did not see this lighted bus, certainly a manual signal would have been unavailing.

While evidence is in sharp conflict, we accept that which tells us that the bus stood upon the paved surface of the right-hand lane and not upon its shoulder.

■ It is actionable negligence when an automobile, without more, stops suddenly in front of another closely following. *Stallard* v. *Atlantic Greyhound Lines*, 169 Va. 223, 192 S. E. 800. There is no evidence here of any sudden stop. Neither Chapman nor Mrs. Whitner was looking while the bus driver, the bus' passengers and a would-be passenger who wished to come aboard, all testify that this stop was gradual and ordinary. As it approached the John street crossing Mr. Waldron, a passenger who sat two seats from the back of the bus, indicated by ringing the bell that he wished to get off. Thompson, another passenger, heard the bell, saw Waldron walk down the aisle and reach the door as it was opened by the bus driver. Mr. Sniveley was a

would-be passenger who wished to come aboard. He stood by until Waldron "got off and got away," and was then in the act of coming aboard when the collision occurred; one foot was on the bus' step. He was knocked down, and two other passengers, as we have seen, were knocked from their seats.

During all this time, and while the bus stood still in the road, Chapman, if he had been paying any attention at all, had ample time to pass it in safety along the middle lane. The plain fact is that he was giving no attention whatever to the duties which rested upon him as a driver.

The primary negligence of the defendant was broken by the independent, efficient and wrongful intervening negligence of Chapman. The primary negligence of the defendant had ceased to operate. The intervening negligence of Chapman was responsible for all that thereafter occurred.

*Reversed and final judgment.*