# Staunton

C. A. Hubbard, et al. v. Walter J. Murray, Administrator of the Estate of George R. Murray, Deceased, et al.

September 13, 1939.

Record No. 2097.

Present, Holt, Hudgins, Gregory, Browning, Eggleston and Spratley, JJ.

The opinion states the case.

*Fred B. Gentry* and *Harvey B. Apperson,* for the plaintiffs in error.

*Kime & Hoback* and *Horace M. Fox,* for the defendants in error.

Eggleston, J., delivered the opinion of the court.

This litigation arises out of an automobile accident which occurred just south of the corporate limits of the city of Roanoke, about 8:15 A. M. on February 26, 1938.

A short distance south of where the accident happened U. S. Highway No. 220 coming from Martinsville unites with State Highway No. 119 coming from the town of Starkey, in Roanoke county. The uniting roads form an inverted "Y," with the stem pointing northwardly toward Roanoke, the eastern fork coming from Martinsville and the western fork coming from Starkey.

As is usual in such cases the evidence is highly conflicting, and under well-settled principles the facts will be stated in conformity with the jury's verdict.

On the morning in question a passenger bus owned by C. A. Hubbard and driven by Charlie Wiseman was bound from Starkey to Roanoke. It proceeded along Highway No. 119 to its intersection with Highway No. 220. After crossing over the intersection the bus proceeded northwardly along the combined roads toward the city and came to a stop on the eastern side of the road opposite a filling station called "Uncle Tom's Barbecue," located on the western side of the highway, for the purpose of discharging a passenger. At this point the paved road is eighteen feet wide. For some distance along the eastern side of the road, both north and south of where the bus stopped, there is a smooth shoulder approximately eight feet wide, with a slight slope leading toward a shallow ditch. The bus came to a stop with its left wheels on the concrete and its right wheels on the shoulder. The passenger alighted and the bus proceeded to move forward. Before it had gained full momentum and before it had gotten entirely on the pavement, its left rear was sideswiped by the overhanging portion of the body of a heavily laden truck proceeding in the same direction. The truck was owned by Carroll J. Price and John C. Glenn and was being driven by John Lewis Dillon.

Almost immediately after the collision the bus came to a stop on the eastern side of the highway, headed north.

After sideswiping the bus the truck ricocheted across the road to its left, collided head on with a Buick passenger car driven by George R. Murray, which was proceeding southwardly, and finally came to a stop on the western side of the road in front of the gasoline pumps of the Uncle Tom's Barbecue filling station. The passenger car was practically demolished, the truck was badly damaged, and Murray was killed as a result of the collision.

Murray's administrator sued the owners and drivers of both the bus and the truck, claiming that the collision was proximately due to the concurring negligence of the operators of the two vehicles.

The administrator contended that the driver of the bus was negligent in stopping partly on the traveled portion of the highway, thus partly blocking the road contrary to the statute, instead of stopping further to the right on the shoulder.

The acts of negligence charged against the truck driver were, that he was proceeding at an excessive rate of speed; that he failed to keep a proper lookout for the bus; that he did not have his truck equipped with proper brakes; that he failed to apply his brakes; and that he was driving after he had become exhausted by reason of along and uninterrupted journey without sufficient rest and sleep.

There was a verdict and judgment in favor of the administrator against all of the defendants in the sum of $10,000.

No petition for a writ of error was filed on behalf of the owners and operator of the truck, and hence the judgment against them has become final.

The owner and operator of the bus have obtained a writ of error to review the judgment of the lower court. Their principal assignments of error are (1) that the driver of the bus was not guilty of any negligence, and (2) that his negligence, if any, was not a proximate cause of the collision,

but that the negligence of the truck driver was the sole proximate cause.

Murray's administrator and the owners and driver of the truck take the position before us that it was a jury question as to whether the bus driver was guilty of negligence and whether such proximately contributed to the collision.

Section 2154(133) of Michie's Code of 1936, as amended by Acts of 1938, page 331, section 86, provides that no bus shall stop on the traveled portion of any highway outside of cities except where it can not with safety leave the traveled portion of the highway. "This provision is for the safety and convenience both of passengers and of the public generally." *Roanoke Railway & Electric Co.* v. *Whitner* (decided June 12, 1939), *ante*, page 253, 3 S. E. (2d) 169.

The violation of a statute, while negligence *per se*, will not support a recovery for damages unless such violation proximately caused or contributed to the injury complained of. *Kinsey* v. *Brugh*, 157 Va. 407, 411, 161 S. E. 41; *Harris* v. *Howerton*, 169 Va. 647, 660, 194 S. E. 692; *Pratt* v. *Miles*, 166 Va. 478, 481, 186 S. E. 27; *Braswell* v. *Virginia Electric & Power Co.*, 162 Va. 27, 40, 173 S. E. 365.

In the instant case even if it be assumed for the purpose of argument that the bus was stopped on the highway in violation of the statute, we think that such was the remote cause and that the negligence of the driver of the truck was the sole proximate cause of the collision here involved.

This accident happened in broad daylight on a clear day. The truck driver lived in Roanoke and was quite familiar with the road. As the truck neared the point of collision the road on which it was proceeding swung to the right on an 8-degree 45-minute curve. The undisputed testimony is that as the truck came around this curve the driver had a clear and unobstructed view for four hundred feet of the bus standing on the highway. The bus is twenty-three feet long, eight feet high, seven and one-half feet wide, and is painted yellow. It was, of course, plainly visible to the truck driver had he but looked ahead.

His story is that as he approached the scene of the collision he was proceeding at about twenty-five miles per hour; that he first saw the bus when it was about two hundred feet ahead of him; that he realized that it was blocking his path; that he had ample distance within which to have stopped had his brakes functioned properly, but that when he "pumped" on his foot brakes for some unknown reason they failed to hold; that he was then confronted with the situation where, in order to avoid a collision, he had to go either to the right or to the left of the bus; that he was prevented from going to the right because the passenger who had just alighted from the bus blocked his path; that he cut his truck sharply to the left in the effort to go around the bus; that in doing so the right projecting end of the body of the truck sideswiped the left rear of the bus; and that almost immediately thereafter the truck collided head on with the oncoming Buick car which had been previously hidden from his view by the bus.

No explanation whatsoever is offered as to why the brakes should have suddenly failed to hold at this time. The truck was equipped with 4-wheel hydraulic foot brakes and an emergency brake which operated independently of the foot brakes. The brakes had been tested and found to be in good condition about two weeks before the accident. The truck driver admitted that throughout the trip from Florida to Roanoke, which he was just completing, the brakes had functioned perfectly. Moreover, it developed that when the truck was within a few hundred feet of the point of the accident, the driver had occasion to slow down for several school children who were crossing the highway. His brakes functioned perfectly at that time, which was only a moment or so before the collision.

After the accident the brakes were examined and while the force of the collision had broken the line holding the fluid necessary to the functioning of the hydraulic brakes, the brakes were found to be otherwise in good condition.

The testimony is that on a dry level road and at a speed of approximately twenty miles per hour, the loaded truck

could have been stopped with the foot brakes alone within a distance of approximately one hundred feet, and with the combined foot and emergency brakes within a distance of approximately thirty-five feet. Indeed, the truck driver admitted that he had ample time and distance within which to have stopped his vehicle after he discovered the presence of the bus had the brakes not failed to function. He further admitted that he made no effort whatsoever to apply the emergency brake.

The jury evidently failed to accept the truck driver's claim that his failure to stop was due to the sudden, unexpected and unexplained failure of his hydraulic brakes to hold.

The physical evidence discredits the truck driver's statement that he was proceeding at a speed of only twenty-five miles per hour as he approached the bus. When the body of the truck struck the rear of the bus the force of the collision was such as to throw the passengers on the bus from their seats. There were marks on the pavement showing that the truck had skidded a distance of thirty-six feet after it collided with the bus.

Moreover, it appeared that the truck driver had left Jacksonville, Florida, at twelve o'clock noon on the preceding day and had driven a distance of approximately six hundred miles at the time of the accident, with a rest period of only two and one-half hours of sleep near Greensboro, North Carolina.

Evidently the jury found from these facts and circumstances that the driver of the truck was inattentive to his duties; that he was not keeping a proper lookout ahead; that he did not have his vehicle under proper control, and failed to apply his brakes when he saw or should have seen the bus in plain view ahead of him in ample time to have avoided the collision with it.

This court has recently had occasion to pass upon a similar situation in *Roanoke Railway & Electric Co.* v. *Whitner* (decided June 12, 1939), *supra*. There Mrs. Whitner, a guest in an automobile driven by Chapman, was injured when the car in which she was riding ran into the rear of a

bus stopped on a straight road and in the act of discharging or taking on passengers. Mrs. Whitner recovered a verdict and judgment against both the operator of the bus and the driver of the car in which she was riding.

On a writ of error granted to the operator of the bus we held that while the jury was warranted in finding under the evidence that the driver of the bus was negligent in stopping on the highway contrary to the statute, such negligence was the remote cause and the negligence of the driver of the car in failing to keep a proper lookout for the standing bus was the sole proximate cause of the accident.

We dealt with a like situation in *Pratt* v. *Miles,* 166 Va. 478, 186 S. E. 27. In that case Miss Miles was injured when the automobile in which she was a passenger collided with a motorcycle and a street car at night. While the motorcycle was not properly equipped with a red rear light, the uncontradicted evidence showed that the surrounding lights from the overhead arc light and the street car made the motorcycle plainly visible if the driver of the automobile had been keeping a proper lookout. We held that under these circumstances there was no causal connection between the failure of the motorcycle to have the required red light and the collision, but that the accident was proximately due solely to the negligence of the driver of the automobile in failing to keep a proper lookout for the motorcycle which was plainly discernible to him if he had but looked.

See also, *Wyatt* v. *Chesapeake & Potomac Tel. Co.,* 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386, in which we held that the unlawful location of a telephone pole on a portion of the highway was not the proximate cause of the plaintiff's injuries which resulted when the car in which she was a passenger, in the effort to avoid striking another car, ran off the traveled portion of the road and struck the pole.

From what was said in these cases we deduce the following general rule: Where a second tort-feasor becomes aware, or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter by an

independent act of negligence brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof.*  The original negligence of the first tort-feasor is legally insulated by the intervening independent negligence of the second tort-feasor, and the latter becomes the sole proximate cause of the accident.

■ These principles apply here.  The testimony is undisputed that the driver of the truck had an unobstructed view of the bus standing on the highway for a distance of four hundred feet; that by the use of his brakes he could have brought his vehicle to a stop, under the conditions then existing, within one hundred feet or even less, and yet through inattention or lack of control he drove his truck into the rear of the bus.  We think it is clear from these facts that the negligence of the truck driver was the sole proximate cause of the accident, and the fact that the bus was improperly stopped on the highway was merely a circumstance of the collision, or a remote cause thereof.

■ If we accept as true the testimony of the truck driver, that he actually saw the bus blocking his path when he was two hundred feet away, and that only the sudden, unexpected and unexplained failure of his brakes to work prevented his bringing his vehicle to a stop before the collision, then such failure of the brakes was the sole proximate cause of the accident.  As was said in *Wyatt* v. *Chesapeake & Potomac Tel. Co., supra* (158 Va., at pages 479, 480, 163 S. E. 370, 373):  " * * * negligence carries with it liability for consequences which, in the light of attendant circumstances, could reasonably have been anticipated by a prudent man, but not for casualties which, though possible, were wholly improbable.  One is not charged with foreseeing that which could not be expected to happen."

See also, *Hawkins* v. *Eason,* 164 Va. 350, 356, 180 S. E. 177; *Hair* v. *City of Lynchburg,* 165 Va. 78, 83, 181 S. E. 285.

*Cf.* 5 Am. Jur., Automobiles, section 164, 1939 Supp., p. 22.

We are not unmindful of the rule that what is the proximate cause of an accident of this character is generally a question for the jury and not for the court to determine. But as we have many times held, when the facts are not disputed and are susceptible of but one inference, the question becomes one of law for the court. See *Wallace* v. *Jones*, 168 Va. 38, 44, 190 S. E. 82; *Roanoke Railway & Electric Co.* v. *Whitner, supra; Pratt* v. *Miles, supra; Wyatt* v. *Chesapeake & Potomac Tel. Co., supra.*

The judgment entered in favor of the administrator against the plaintiffs in error, C. A. Hubbard and Charlie Wiseman, will be reversed and a final judgment will be entered here in their favor.

*Reversed and final judgment.*