# 𝔯𝔦𝔠𝔥𝔪𝔬𝔫𝔡

Nick Crist v. Mrs. David (Blanche) Fitzgerald.

March 7, 1949.

Record No. 3447.

Present, All the Justices.

The opinion states the case.

*Crockett & Gillespie*, for the plaintiff in error.

*Smith & Peery* and *M. Crockett Hughes, Jr.*, for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

Nick Crist asks us to reverse the judgment and set aside the verdict which Mrs. David (Blanche) Fitzgerald recovered against him for personal injuries sustained in the collision of an automobile, in which she was riding as a passenger, with a trailer, operated by the defendant and parked, without lights, upon a State highway.

The parties will be referred to according to their respective positions in the trial court.

In view of defendant's contention that the trial court erred in refusing to strike the evidence of the plaintiff because it showed that the negligence of the driver of the car in which Mrs. Fitzgerald was riding was the sole proximate cause of the collision, the evidence will be stated somewhat in detail.

On January 30, 1947, Mrs. Fitzgerald and Mrs. Sallie Saunders were passengers in an automobile being driven by Miss Maxine Fitzgerald, the twenty-three-year-old daughter of the plaintiff. They left their home at Boissevain about 6:15 p. m., travelling on State Highway No. 80, southerly towards Bluefield, Virginia, where Miss Fitzgerald intended to attend a night session of a business college. Miss Fitzgerald had driven back and forth on the same highway in pursuance of her attendance upon her nightly class since September of the prior year. On this day, her mother and Mrs. Saunders accompanied her for the purpose of meeting

a relative of Mrs. Saunders, who was expected to arrive in Bluefield that evening by train. Her two passengers had no other object in the trip and exercised no control over the car. All three of the persons in the car sat on the front seat, Mrs. Saunders in the middle and Mrs. Fitzgerald on the right.

Miss Fitzgerald said that it was dark when she left home, the sun having set at 5:15 p. m.; that, with proper lights on her car burning, she drove between 30 and 35 miles an hour; that she was keeping a careful lookout; that she had no warning of any character of an obstruction on the road; that at a quarter to seven p. m., when she was about 20 feet from it, she observed a trailer, which blocked the entire right-hand side of the highway upon which she was travelling; and that she immediately applied her brakes and turned her wheel to the left, but that the car began skidding, on account of the slippery condition of the highway, and slid into the trailer, the right front of her car striking the left rear of the trailer. She said that the highway was wet from a rain which had stopped shortly before the accident; that "it was misty as it usually is through that bottom after a rain;" that mud and clay were on the road and also on the trailer; and that the trailer was of the same dark color as the highway, resembling the color of the road, so that she could not distinguish it from the road. After the collision her car went only half of the way across the highway.

Mrs. Fitzgerald and Mrs. Saunders each corroborated Miss Fitzgerald as to the speed of her car and as to the surrounding conditions of the weather, the highway, and the location of the trailer. Both said that they were keeping a lookout on account of the wet condition of the road, and the misty, hazy weather, and neither one saw the trailer until they were almost on it and neither one heard or saw any one giving a warning of the presence of the trailer on the highway.

The collision occurred about fifteen minutes to seven p. m., on State Highway No. 80, a short distance north of the

limits of the town of Bluefield, Virginia. At the point of the collision, the highway is hard-surfaced for a width of 19 feet. It is straight for a distance of approximately 1,000 feet from the point where the rear end of the trailer was stopped on the highway. Its western shoulder at the point of collision was about 15 feet wide. On the opposite or eastern side is located a bottling plant of the defendant. There is a distance of about 73 feet of open ground, including the eastern shoulder of the road, from the hard surface of the highway to the building of the bottling plant.

The highway, near the scene of the collision, was wet from the rain of that evening, and somewhat muddy because of the movement of trucks from the wet adjoining land.

W. F. Shumate, chief of police of the town of Pocahontas, and G. B. Eary, a night police officer of that town, said that around 7:00 p. m. the same evening, as they travelled Highway No. 80, in the same direction Miss Fitzgerald was travelling, they observed a trailer blocking the right half of the highway and that it was unattended by any person and without any warning lights. They said they were pretty close to the trailer before they saw it, and it was necessary for them to run their car on the left-hand side of the road to pass it safely. The trailer was described as a flat car, dark colored, like the black top of the highway, upon which it was situated. When they later made their return trip, they saw a "wrecker" pulling a wrecked car towards Pocahontas in the opposite direction from Bluefield.

Mrs. Fitzgerald, 56 years of age, was seriously and permanently injured as a result of the collision. She was confined in the Bluefield Sanitarium, Inc., at Bluefield, West Virginia, from January 30th to March 27, 1947, a period of 56 days. She remained in bed for about two weeks following her discharge from the hospital, and was still disabled at the date of the trial of the case in August, 1947. Her physician, Dr. D. L. Hosmer, of the Bluefield Sanitarium, stated that she suffered a definitely permanent crippling of her right hip as a result of a fractured pelvis and that there

would probably be some progression of the trouble by reason of a development of traumatic arthritis. We need not go into further details of the extent of her injuries because the amount of the damages is not in question.

On January 30th, the defendant had been engaged in the transfer of his bottling plant equipment from Pocahontas to his newly constructed plant opposite the point where the accident occurred. He was assisted by two boys, James Reynolds and Don L. Meadwell, who were respectively about 17 and 18 years of age. In the removal of his equipment, Crist was using a flat trailer, which was attached to and pulled by a motor truck. Upon the trailer was loaded a heavy eleven-horse power boiler. The trailer was 3 or 4 feet high, 7 feet wide, and 11 feet long, with eight wheels, four in the front and four in the rear. The truck and the loaded trailer arrived on the highway opposite the bottling plant at about 4:00 p. m.

Some difficulty arose in unloading the boiler because it was thought unwise to pull the trailer across the wet ground to the building in which it was to be placed. The truck was unhooked from the trailer and pulled off to the right side of the hard surface. In the unloading operation, this truck became stuck in the mud. Several other trucks, including "a wrecker," were secured, all of which became mired. However, the boiler was eventually unloaded. During all of these operations, the trailer remained upon the right-hand side of the highway, without any lights on the front or rear, from 4:00 p. m. until the collision occurred around 7:00 p. m.

The defendant said that, because there were no lights on the trailer, he placed Meadwell about 40 feet to the rear of the trailer with a flashlight, and James Reynolds in front of the trailer, to direct traffic; and that several cars and a passenger bus were warned by his lookouts in time to avoid collision with the trailer.

Crist further said that Miss Fitzgerald was driving fifty-five or sixty miles an hour as she approached. In explanation of the delay in moving the trailer off the road after it

had been unhooked from the truck, and the truck moved to the shoulder of the road where it got stuck, he said, "I got my truck then and we got stuck, and we fooled around with it 'til dark."

Reynolds and Meadwell testified that after the traffic had cleared up somewhat, Crist called them back to the trailer for the purpose of pushing it across the road to the bottling plant; that they had been unable to back the trailer off with the motor truck; and they then tried, without success, to push it off themselves. During the latter operation they said Crist called their attention to a car approaching from the mountain in the rear and ordered Meadwell to direct the approaching car around the trailer; that Meadwell obeyed and with a flashlight in his hand waved it backwards and forwards across the road as a warning to the approaching car; that the car did not stop, but crashed into the trailer; and that Meadwell had to jump off the road to avoid being struck.

It is apparent from the testimony of the above two boys that they were confused as to what they were actually doing and as to what occurred between the time they were trying to push the trailer from the road and the time of the arrival of Miss Fitzgerald's car.

Bobby Scott, sixteen-year-old onlooker, said he saw Meadwell flag the approaching car with the flashlight and heard the brakes of that car applied as it got almost to the trailer. He further said that when Crist and his employees started moving the trailer off the road, "Mr. Crist told us to go down the road, told us to move, he thought something might hit the truck." Crist did not deny this statement.

The court overruled a motion to strike plaintiff's evidence and, thereupon, gave four instructions to the jury on behalf of the plaintiff and nine on behalf of the defendant.

The jury returned a verdict in favor of the plaintiff in the sum of $10,000. Upon that verdict the court subsequently entered judgment.

After the jury returned their verdict, the defendant moved to set it aside for various assigned errors. Upon being asked

by the court if he desired a date for argument, counsel for the defendant replied: "We have one question we want to be heard on, and that is the question of proximate cause." We agree that this question is the real issue in the case.

The defendant contends that the evidence of the plaintiff shows that Miss Fitzgerald should have been aware of the trailer in time to have avoided striking it, if she had kept a proper lookout, and that the original negligence of the defendant, if any, was "legally insulated" by her intervening independent act of negligence in failing to keep a lookout, and thus her later negligence became the sole proximate cause of the collision as a matter of law. He relies on *Hubbard* v. *Murray*, 173 Va. 448, 3 S. E. (2d) 397.

This contention overlooks the testimony of Miss Fitzgerald and the two passengers in her car that she did keep a careful lookout; that no warning of the obstruction was given to her by any person or in any manner whatever; and that she was prevented from seeing the obstruction on the road by reason of the condition of the weather, the condition of the road, and the color of the obstacle.

It also overlooked the fact that if Miss Fitzgerald had seen a person waving a flashlight on the road, she would not have necessarily known what such a light meant. It is not claimed that the light disclosed the presence of the trailer.

The defendant was guilty of violating Virginia Code, 1942, (Michie), section 2154 (145)* in failing to display a red light on the rear of his vehicle, visible under normal atmospheric conditions from a distance of three hundred feet. He did not remove his stopped vehicle from the highway within a reasonable time. Virginia Code, 1942, (Michie), section 2154 (133). He placed no flares or torches on the highway. Virginia Code, 1942, (Michie), section 2154

*Section 2154 (145):—"Whenever a vehicle is parked or stopped upon a highway whether attended or unattended during the period from a half hour after sunset to a half hour before sunrise there shall be displayed upon such vehicle one or more lamps projecting a white light visible under normal atmospheric conditions from a distance of three hundred (300) feet to the front of such vehicle and projecting a red light visible under like conditions from a distance of three hundred (300) feet to the rear. * * * "

(133a). He knew that his parked trailer put other travellers on the road in a position of danger or injury. This dangerous condition he allowed to continue and to remain active for mischief for approximately three hours, from 4:00 p. m. up to the time the trailer was struck by the plaintiff's automobile. Such negligence made a collision not only possible but highly probable.

The violation of a statute constitutes negligence *per se*, and if it proximately causes or contributes to an injury, it will support a recovery of damages for such injury. "The question of proximate cause, or whether there is causal connection between negligence and accident, is a question of fact." *Scott* v. *Simms*, 188 Va. 808, 51 S. E. (2d) 250, decided January 10, 1949; *Hubbard* v. *Murray, supra; Powell* v. *Virginian Ry. Co.*, 187 Va. 384, 46 S. E. (2d) 429; *Standard Oil Co.* v. *Roberts*, 130 Va. 532, 107 S. E. 838.

In *Jefferson Hospital* v. *Van Lear*, 186 Va. 74, 41 S. E. (2d) 441, we said:

" * * * an intervening cause does not operate to exempt a defendant from liability if that cause is put into operation by the defendant's wrongful act or omission * * * .

"An intervening cause will not be deemed to have broken the causal connection if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer."

In *Richmond* v. *Gay*, 103 Va. 320, 324, 49 S. E. 482, it was said:

" * * * And in order to excuse the defendant's negligence this intervening cause must be either a superseding or responsible cause. To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's contributing negligence thereto in the slightest degree, produces the injury. * * * ."

To the same effect, see also, *Appalachian Power Co.* v. *Wilson*, 142 Va. 468, 129 S. E. 277; and *Scott* v. *Simms, supra.*

The driver of plaintiff's car was travelling in her proper lane, and she had the right to assume that no vehicle

or obstruction would be parked on the highway in front of her. The facts of the case bring it fairly within the principles stated in a long line of cases, which include *Moore* v. *Virginia Transit Co.*, 188 Va. 493, 50 S. E. (2d) 268; *Marks* v. *Ore*, 187 Va. 146, 45 S. E. (2d) 894; *Ferguson* v. *Virginia Tractor Co.*, 170 Va. 486, 197 S. E. 438; *Armstrong* v. *Rose*, 170 Va. 190, 196 S. E. 613; *Twyman* v. *Adkins*, 168 Va. 456, 191 S. E. 615; and *Waynick* v. *Walrond*, 155 Va. 400, 154 S. E. 522, 70 A. L. R. 1014.

■ We find nothing inherently incredible in the version of the accident and its cause, as related by plaintiff's witnesses. The facts were in dispute, and the question whether Miss Fitzgerald was using reasonable and ordinary care, under the circumstances, and whether her negligence, if any, became the sole proximate cause of the collision, notwithstanding the original negligence of the defendant, became one for the jury. It was for them to say whether the collision followed the defendant's negligence in a natural and continuous sequence, and whether such negligence constituted a proximate or contributory cause of the injuries complained of, or whether Miss Fitzgerald was guilty of intervening or subsequent negligence, which entirely superseded the operation of defendant's negligence, so that it alone produced the resulting injuries, without the original negligence of the defendant contributing thereto.

It is only when we can say the facts are susceptible of but one inference, and reasonable men can reach but one conclusion from them, that the question becomes one of law for the court. We cannot say that such is the case here. *Scott* v. *Simms, supra; Wyatt* v. *Chesapeake, etc., Tel. Co.*, 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386; *Hubbard* v. *Murray, supra.*

During the course of the trial, Mr. M. Crockett Hughes, of counsel for the plaintiff, was placed on the stand to prove the amount of Mrs. Fitzgerald's hospital bill. The defendant objected to the proof by that witness. Hughes then testified that in his capacity as attorney for the plaintiff, he personally requested the Bluefield Sanitarium, Inc., at

Bluefield, West Virginia, to give him a statement of the account of Mrs. Fitzgerald; that he afterwards wrote it to send him the bill; that it mailed it to him and later wrote him asking when it was going to be paid. Thereupon, the court allowed the witness to offer in evidence the bill of the hospital made out on its business stationery. It showed that the plaintiff was indebted to the hospital in the sum of $715.20, which included room and board for 56 days, from January 30, 1947, to March 27, 1947, amounting to $524, surgical fees and examinations of $150, and medical supplies and services $41.20.

The defendant contends that the testimony of Mr. Hughes was inadmissible because it was not the best evidence of the amount of the expense incurred by the plaintiff. He here claims that there was a possibility that its admission influenced the jury in arriving at the amount of their verdict.

While, undoubtedly, the better proof of her expenses should have come from the source that rendered the services, we think that no harmful error was committed in admitting the evidence in question under the circumstances here. According to the record, Bluefield Sanitarium, Inc., is located in Bluefield, West Virginia. The court lacked power to compel the attendance of witnesses from that State, who had personal knowledge of the amount of the bill, and the custody of the records of the hospital. Had the statements been sent to the plaintiff, she could have testified as to the amount demanded of her. Mr. Hughes, acting as her agent and attorney, secured this information.

The record shows the nature and extent of her injuries, that she remained at the hospital for 56 days, and received considerable attention. The jury, as reasonable men, could hardly doubt that a hospital and medical bill, under the circumstances, would be substantial. The bill merely stated the character of the services rendered and the amount demanded of her. Neither the services nor the charges therefor are claimed to be excessive. Under the circumstances, we do not think the admission of the evidence was prejudicial to the defendant.

We find no merit in the remaining assignments of error, and do not deem it necessary to prolong this opinion by a discussion of them, except to say that the instructions, as given, fully and completely instructed the jury on all of the principles of law applicable to the theories of the respective parties. Read as a whole they were not unfavorable to the defendant or calculated to mislead the jury. Amendments to defendant's requested instructions D-1 and D-2 were properly made by the court, by striking out language which was confusing and misleading. The instructions given on behalf of the defendant repeatedly set out in extensive detail the theory of his defense.

The issues in this case were fully and fairly submitted to the jury; the jury, who saw and heard the witnesses testify, accepted the evidence of the plaintiff; and the trial judge has approved their verdict. We find no error in the proceedings and, therefore, the judgment is affirmed.

*Affirmed.*