## Richmond

HAROLD S. SAUNDERS, JR. v. BRENDA S. BULLUCK, AN INFANT, ETC., ET AL.

CAROL P. RITTENHOUSE v. BRENDA S. BULLUCK, AN INFANT, ETC., ET AL.

March 4, 1968.

Record Nos. 6563, 6564.

Present, All the Justices.

*Edward R. Slaughter, Jr.; Gary C. McGee (McGuire, Woods & Battle,* on brief), for plaintiff in error in Record No. 6563.

*L. A. Belcher (Shewmake, Gary, Goddin, Blackwell, Elmore & Belcher,* on brief), for plaintiff in error in Record No. 6564.

*James A. Eichner (Ashby B. Allen; Allen, Allen, Allen & Allen,* on brief), for defendants in error in Record Nos. 6563 and 6564.

BUCHANAN, J., delivered the opinion of the court.

Brenda S. Bulluck, plaintiff, instituted this action by her next friend against Harold S. Saunders, Jr., and Carol P. Rittenhouse, defendants, for damages for injuries suffered by her when an automobile driven by Saunders, her brother, in which she was a guest passenger, collided with an automobile driven by Mrs. Rittenhouse. The case was tried to a jury which returned a verdict for $5,000, on which the court entered judgment against the defendants jointly and severally, and they are here on separate writs of error.

The accident happened around 12:15 p.m., April 22, 1962, a clear, dry day, on State Route No. 6, in Nelson county, near the foot of a steep hill. The plaintiff, then sixteen years old, was in the back seat of the automobile. Sitting beside her on the right was Jesse W. Bulluck, III, whom she later married. In the front seat with Saunders, the driver, was Frances Miller, whom Saunders afterwards married.

The road ran generally east and west and was divided into two lanes by a double white line in the middle. The Saunders car was going west. At the place of accident the hard surface of the road was twenty feet, two inches wide, with shoulders about seven feet wide on each side and suitable for parking for a distance of twenty feet on the north side and forty feet on the south side.

About ten minutes before the accident, William D. Parr had parked his car on the south side of the road facing east, about a foot and a half, he testified, from the hard surface, and had gone down to a creek, leaving Miss Mary Ellen Wade, later his wife, in the car. While the Parr car was so parked, an automobile driven by the defendant, Carol P. Rittenhouse, in which her husband was a passenger, came by going east. They recognized the Parr car, drove on up the hill, turned around and came back to inquire whether there was any trouble. They drove up about even with the Parr car on their left and stopped or were stopping. Mrs. Rittenhouse had called out to Miss Wade, but before she could answer the automobile driven by Saunders crashed into the back of the Rittenhouse car and the plaintiff received the injuries for which she brought this action.

## The Case Against Saunders

[1] Saunders contends, first, that the plaintiff's case can rise no higher than her own testimony, which failed as a matter of law, he says, to show that he was guilty of gross negligence which proximately caused the accident. It is not disputed that plaintiff, a guest in the Saunders car, must prove gross negligence to be entitled to recover from Saunders. Code 1950, § 8-646.1, 1957 Repl. Vol.

In *Massie v. Firmstone*, 134 Va. 450, 462, 114 S.E. 652, 656, it was said, and has frequently since been repeated, that "No litigant can successfully ask a court or jury to believe that he has not told the truth. His statements of fact and the necessary inferences therefrom are binding upon him." The phrase "statements of fact" is important. The rule does not necessarily apply to statements of opinion or of incomplete facts. It applies "where a litigant testifies unequivocally to facts within his knowledge and upon which his case turns." *Crew v. Nelson*, 188 Va. 108, 113, 49 S.E.2d 326, 328. But if his testimony in its entirety does not unequivocally show that his case is without merit or if reasonable men may differ as to its effect, "the jury must be permitted to pass upon the testimony and the effect thereof, taken together with all the other evidence in the case." *Virginia Elec., Etc., Co. v. Mabin*, 203 Va. 490, 494, 125 S.E.2d 145, 148. *Cf. Rigney v. Neauman*, 203 Va. 822, 826, 127 S.E.2d 403, 406.

In the present case the plaintiff had never driven an automobile. She was on the back seat of the car beside the young man she later married and, she said, "I was sitting over close to him." She was asked how Saunders, her brother, had been driving up to the time

they came over the hill and she answered, "we weren't driving fast. He didn't seem to be driving reckless in any way, as far as I'm concerned." But, on cross-examination she said, "I really don't know what speed."

Her testimony, therefore, is to be considered with the other evidence on the question of defendant Saunders' negligence.

[2] Defendant Saunders was eighteen years old at the time of the accident and had been driving only seventeen days. He was called as an adverse witness by the plaintiff and testified that just before he got to the top of the hill he was going 55 to 60 miles an hour; that as he came over the top of the hill he saw the Rittenhouse car and thought it was moving, "just running along slow," but when he got about half way down the hill he realized it was stopped and that the parked (Parr) car was partially on the road and he did not think he could get between them; that he did not have time to stop and he hit the Rittenhouse car in the back. He said the Parr carr was headed east (facing him) with its two left wheels on the hard surface; that the Rittenhouse car was in the right-hand lane facing west, parallel with the Parr car, "I'd say front window to front window," fairly close to the center line of the road, and completely on the paved surface.

He said he was around 400 to 500 feet away from the Rittenhouse car when he first saw it and saw its red lights come on, and he had traveled about half that distance, or was "almost on top of them" when he realized it was moving slowly or had stopped, and he put on his brakes when he was about 200 feet away. Asked why he took no action when he saw the red lights on the Rittenhouse car come on, he replied that he was not sure why he didn't. He told an officer at the scene that if he had had more experience the accident might not have happened.

The Saunders car made a tire mark on the macadam surface of the road for a distance of 109 feet, and a mark of 22 feet on the shoulder "slightly trenched out" by the right rear wheel, and a dark oily mark under the Saunders vehicle indicated the point where the collision occurred.

The force of the blow propelled the Rittenhouse car some 500 feet from the point of collision, about 300 feet of which was up the next hill. It was badly damaged in the collision and the front end of the Saunders vehicle was demolished.

Julian W. Rittenhouse, Jr., husband of one of the defendants, testi-

fied that he saw and heard the Saunders car as it came over the hill at a high rate of speed, which he estimated to be about 65 miles an hour.

Saunders' wife testified that as they went up and crossed the hill she saw the Rittenhouse car and thought at first that it was moving and then realized it was stopped, and Saunders tried to put on his brakes "but it was too late, and we crashed." She said that prior to the accident her husband was driving a little over 50 and was about half way down the hill when he applied his brakes. She said the Parr car was on the road and there did not appear to be room for a car to go between it and the Rittenhouse car. Bulluck, on the back seat, was knocked unconscious and did not remember what happened.

The evidence as the jury could have concluded established that Saunders, an inexperienced driver, drove his car at a speed of 60 miles an hour or more over this hill without any knowledge of what he would encounter on the other side. As he topped the hill he saw these two cars down the road in front of him some 500 feet away, one on each side of the road. He saw the red light come on the car in his lane of travel, indicating that it was stopping or had stopped. The space between it and the car on the opposite side was narrow and it looked to him "like I couldn't get through there." Yet he continued half way down the hill at undiminished speed before he applied his brakes, and then he was "almost on top of them".

The trial court held that under this evidence it was for the jury to decide whether Saunders was guilty of gross negligence, and we agree with that conclusion.

[3] Defendant Saunders also assigned error to the admitting in evidence of the testimony of State Trooper Kauffman and Julian W. Rittenhouse, Jr., husband of defendant Rittenhouse, as to tests made by them sometime after the accident.

Kauffman testified that shortly after the accident he tried to make a similar test as to stopping distance on the same hill. He was driving a 1961 Chevrolet car which he thought weighed around 3400 pounds, and its brakes were in good working condition. He found that at a speed of 55 miles an hour he could stop without difficulty before getting to the beginning of the 109-foot mark on the road made by the Saunders car.

Rittenhouse testified that in the same place, under the same weather conditions and driving a 1956 Plymouth, weighing about 3700-3800 pounds, he found that at a speed of 55 miles an hour he could stop approximately half way down the hill.

Saunders complains of this evidence because it was not shown that

the cars used to make the tests were similar to the Dodge car driven by him; that they were of different makes and years, and both of the witnesses knew that they meant to stop as soon as they could see the place where the accident happened.

Experiments of this kind may be admitted in evidence if the conditions under which they are made substantially correspond to those surrounding the accident. *Trant* v. *Upton*, 159 Va. 355, 371, 165 S.E. 404, 410; *Portsmouth Transit Co.* v. *Brickhouse*, 200 Va. 844, 848, 108 S.E.2d 385, 388; 7 Mich. Jur., Evidence, § 66, p. 412.

The court held that the tests were made under conditions substantially similar to those existing at the time of the accident and that any differences affected only the weight of the evidence. *Cf. Doss* v. *Martin*, 205 Va. 306, 136 S.E.2d 854.

The purpose of experiments is to help the jury to weigh the evidence and ascertain the truth. The two tests here complained about were of little if any aid in this respect. But if not helpful, they were not sufficiently harmful to require a reversal.

Saunders complains of the refusal of his Instruction F, which would have told the jury that when a party testifies to facts within his own knowledge, his testimony and the inferences from it are binding on him and he cannot rely on evidence in conflict to strengthen his case. It was properly refused. Such an instruction, if given, should tell the jury that the litigant's testimony must be considered as a whole. *Virginia Elec., Etc., Co.* v. *Mabin, supra*, 203 Va. at 494, 125 S.E.2d at 148.

Saunders also asserts that the court should not have included in plaintiff's Instruction No. 8 a paragraph numbered "4." to the effect that the exercise of reasonable care required Saunders to use his brakes to avoid running into another vehicle. In the preceding three paragraphs the jury were told that Saunders had the duty to keep his vehicle under proper control, to keep a proper lookout, and to operate his vehicle at a reasonable speed. The addition only told the jury what they already knew and was useless but harmless.

### The Case Against Rittenhouse

[4] Mrs. Rittenhouse stopped her car on the hard surface of the road in the westbound driving lane at a point where there was room to park on the shoulder, as the jury could conclude from the evidence. That act was a violation of the statute, Code § 46.1-248, 1967 Repl. Vol., and hence she was guilty of negligence. *Hubbard* v.

*Murray*, 173 Va. 448, 452, 3 S.E.2d 397, 399; 13 Mich. Jur., Negligence, § 15, p. 520. She does not now contend to the contrary, but insists that her negligence was not a proximate cause of the accident. She relies on *Roanoke Ry. & Elec. Co.* v. *Whitner*, 173 Va. 253, 260, 3 S.E.2d 169, 172, and *Hubbard* v. *Murray, supra.*

In *Roanoke Railway* the court found that the primary negligence of one defendant had ceased to operate and the intervening negligence of the other was responsible "for all that thereafter occurred." 173 Va. at 260, 3 S.E.2d at 172.

In *Hubbard* a bus stopped with its left wheels on the hard surface to discharge passengers and then pulled out, but before it got entirely on the pavement it was sideswiped by a truck which then ricocheted across the road to its left, collided with an oncoming passenger car and killed its driver. It was held that the negligence of the truck driver was the sole proximate cause of the accident and the fact that the bus was improperly stopped on the highway was merely a circumstance of the collision, or a remote cause of it.

Those cases are not controlling in the present case. They were discussed and distinguished in *Vought* v. *Jones*, 205 Va. 719, 139 S.E.2d 810, in which an ice cream truck was stopped on the western side of the road headed south, with its left wheels on the hard surface. A child, after making a purchase, came around the back of the truck and was crossing to his home on the opposite side of the road when he was struck by a northbound car. We held that the *Hubbard* and *Roanoke Railway* cases, *supra*, were not applicable, but that the negligent act of stopping or parking the truck on the road had not ceased to operate but continued down to the time of the accident.

In order for a defendant's negligence to be a proximate cause of the injury, it is not necessary that the defendant shall have foreseen the precise injury that happened. "It is sufficient if an ordinary, careful and prudent person ought, under the circumstances, to have foreseen that an injury might probably result from the negligent act. * *" *Scott* v. *Simms*, 188 Va. 808, 817-18, 51 S.E.2d 250, 254.

" '* * To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's contributing negligence thereto in the slightest degree, produces the injury. * *' " *Savage Truck Line* v. *Traylor*, 193 Va. 579, 585-86, 69 S.E.2d 478, 482. See also *Crist* v. *Fitzgerald*, 189 Va. 109, 118, 52 S.E.2d 145, 149; *Baxley* v. *Fischer*, 204 Va. 792, 798, 134 S.E.2d 291, 295.

In the present case the Rittenhouse automobile was stopped so as to completely block the right-hand lane of travel and at a place where there was parking room on the shoulder. Directly opposite her car, very close to if not partially on the hard surface, was the Parr car, leaving a narrow space between the two cars. Back of the Rittenhouse car was a steep hill. The driver of a westbound car could not see the two parked cars until he came over top of the hill about 500 feet away. Even at the legal rate of speed, he would have only seconds to decide on how to operate his car. Saunders saw the situation and thought he would not have space to pass between the two vehicles. When he applied his brakes he could not stop and crashed into the back of the Rittenhouse car. Clearly, we think, it was at least a jury question whether the negligent act of Mrs. Rittenhouse in stopping her car in violation of the statute was a contributing cause of the accident.

[5] Defendant Rittenhouse assigns error to admitting in evidence nine photographs showing the road at and adjacent to the scene of the accident. Her objection was that they were taken when there was snow along the highway and on the shoulders of the road, whereas the accident happened on a bright, sunny day. She argues that the pictures with snow on the shoulders give a distorted view of the width of the shoulders. These pictures were introduced by defendant Saunders. Trooper Kauffman testified distinctly as to the width and length of the shoulders at the place where the accident happened. He explained that at the time of the accident there was no snow on the road, and he testified that the pictures did not distort the width of the shoulders. There was no error in admitting them in evidence.

[6] Defendant Rittenhouse also complains of the action of the court in changing the word "stopped" to the word "operated" in her Instruction No. 1-C, because the statute, Code § 46.1-248, says that no vehicle shall be "stopped" so as to impede or make dangerous the use of the highway by others. The court explained that while there was testimony that Mrs. Rittenhouse stopped, there was also testimony that she was moving very slowly, and the jury could find her negligent in either event. Code § 46.1-248; § 46.1-193 (2) (a). It was not error to make the change.

Finally, Mrs. Rittenhouse complains of the giving of plaintiff's Instructions 12 and C because they repeated what the court had already told the jury in other instructions as to the duties of Mrs. Rittenhouse, and were repetitious and improperly emphasized her duties.

In all the court gave twenty-one instructions to the jury. It is not surprising, therefore, to find some repetition. The court recognized in its written opinion that these two instructions to some extent were duplications of others given, but held that defendant Rittenhouse was not thereby prejudiced. We agree with that conclusion.

We find no reversible error and therefore we affirm the judgments in both cases.

*Affirmed.*