## Richmond

JOHN RIGGLE, ET AL. v. QUINCY VESTER WADELL.

January 16, 1976.

Record No. 741231.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*Raymond H. Strople (Dennis F. McMurran; Moody, McMurran & Miller,* on brief), for plaintiffs in error.

*Daniel W. Wilkinson, Jr. (Bennett L. Stein; West, Wilkinson, Stein & West,* on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

Plaintiffs, John Riggle and United States of America, filed their motion for judgment for damages in the trial court against defendants, Quincy Vester Wadell and Frank Z. Brill, for injuries received by Riggle in an automobile accident. The claim of United States of America was for reimbursement of the cost of hospital and medical care and treatment furnished Riggle.

At the conclusion of plaintiffs' evidence the trial court, on defendants' motions, struck the evidence and entered summary judgment for both defendants. Plaintiffs have appealed the final judgment order of September 4, 1974, only insofar as it awarded judgment in favor of defendant Wadell. The question for our determination is

whether the trial court erred in ruling that the sole proximate cause of the accident was the negligence of Thomas Asay, operator of the automobile in which Riggle was riding.

At 2:30 a.m. on April 27, 1970, State Trooper D. F. Brown found Brill's station wagon disabled in a slight gully in the median strip between the two eastbound and the two westbound lanes of Interstate Route 64 about seven-tenths of a mile west of the Patrick Henry Airport exit in the City of Newport News. Brown parked in the median strip and proceeded to investigate the accident. He ascertained that the Brill vehicle had left the highway when Brill, proceeding in an easterly direction, had gone to sleep or lost control of his station wagon. It was raining and there were no street lights on the highway. A wrecker truck had already arrived and parked facing west in the median strip, 25 to 30 feet in front of the Brill vehicle. Three reflector flares had been placed in the left-hand passing lane, the easternmost reflector being a little to the west of the disabled station wagon. Trooper Brown placed a burning red flare in the same lane, west of the westernmost reflector and approximately 150 feet west of the Brill vehicle. He observed an automobile, operated by one Wolf, parked with its left wheels just on the paved shoulder of the right-hand eastbound lane. Trooper Brown's testimony suggests that another car was parked farther to the west on this same shoulder.

After completing his investigation of the Brill mishap Trooper Brown permitted the wrecker crew to attach a cable to the station wagon to pull it from the median strip. As the wrecker began to pull the cable Brown first saw the Wadell car, slightly to the right of the reflectors and straddling both eastbound lanes, "either at a complete stop or so near to it" that he could not determine whether it was moving. At that moment the automobile operated by Asay came east on the highway "at a right rapid pace" and struck the Wadell car directly in the rear end, knocking that car 72 feet across the highway and into the rear end of the Wolf automobile. Riggle, who had been riding on the front seat of the Asay car, was injured in the collision and was removed to a hospital. The Wadell and Asay vehicles were badly damaged. Brown estimated that the speed of the Asay car at the time of the accident was at least 65 miles per hour, which was then the posted speed limit.

Brown testified that, as he had approached the scene to investigate the Brill accident, he could see the amber flashing light on the wrecker for at least three-tenths of a mile; that this light and the headlights on the wrecker were burning when the Wadell car was

struck; that four-way flashing lights on the Wolf automobile, the red lights and other lights on Brown's unmarked police car, and the lights of the Wadell car were also burning; that the reflectors and flare in the left-hand eastbound lane were shining; and that the paved right-hand shoulder and most of the contiguous eastbound lane were open for travel at the time of the collision.

Although the rain had ceased, the highway was wet. According to the trooper's testimony, each of the eastbound lanes was 12 feet wide, as was the paved right-hand shoulder, and the highway ran in what he described as a "level curve, a long sweeping curve".

Trooper Brown testified that Wadell stated after the accident that he had not seen the police car and had stopped, or almost stopped, to see if he could help, when his car was struck by that of Asay.

Riggle testified that he and Asay were serving in the United States Navy at the time of the accident; that they were returning to duty in Newport News from a weekend visit to Riggle's family in Moundsville, West Virginia; that after he had driven about three hundred miles to the outskirts of Richmond Asay relieved him, and he then slept while Asay drove; and that he awakened as the police officer assisted him after the accident.

Asay's testimony was given by deposition. He testified that he and Riggle were traveling in Asay's car; that after relieving Riggle at Richmond he picked up three sailors who were hitchhiking back to their base; that he was driving east on Interstate 64 at approximately 65 miles per hour when he saw the glare of flares that appeared to be "off to the side of the road" about a mile ahead; that when he was about 150 feet from the flares he saw that they were in the left-hand lane in which he was driving; that he saw a car ahead of him in the same lane; and that he started to move into the right-hand lane to pass. Asay admitted that when he began to turn into the right-hand lane the sailors on the back seat cried, "Look out, stop", but that he saw no obstacle in that lane and told them to "shut up". Then noticing a car stopped or moving slowly in what he thought was the right-hand lane, Asay discontinued his turn into that lane. When he realized that the car in front of him was straddling the lanes Asay applied his brakes at a distance of 40 to 60 feet but collided with the Wadell car while traveling at a speed of 40 to 50 miles per hour.

Despite conceding, as they must, the negligence of Asay, plaintiffs contend that Wadell was also guilty of negligence which was a proximate cause of the accident. They argue that Wadell obstructed the

highway in violation of Code § 46.1-248[1] and was, therefore, negligent as a matter of law, and that it was a jury question whether such negligence was a proximate cause of the accident. Plaintiffs argue, alternatively, that it was for a jury to determine whether Wadell was guilty of common law negligence that was a proximate cause of the accident. We do not agree with either argument.

The cases relied on by plaintiffs are distinguishable. In *Cox* v. *Mabe*, 214 Va. 705, 204 S.E.2d 253 (1974), a driver left her car parked partially on the hard-surface of a highway in violation of Code § 46.1-248. We held that it was a jury question whether her negligence was a proximate cause of an accident which occurred when an approaching motorist applied his brakes when he saw the parked car but could not stop and swerved to the other side of the road and struck a vehicle approaching from the other direction. In *Saunders and Rittenhouse* v. *Bullock*, 208 Va. 551, 159 S.E.2d 820 (1968), a driver stopped on the highway and blocked a lane of travel in violation of Code § 46.1-248. We held that it was a jury question whether her negligence was a contributing cause of the collision where the driver of the vehicle which struck her had no view of the stopped vehicle until he came over the top of a steep hill 500 feet away. In *Moore* v. *Virginia Transit Co.*, 188 Va. 493, 50 S.E.2d 268 (1948), a motorist drove at night into the rear of an unlighted bus, standing disabled on a city street. The plaintiff alleged breach of a common law duty not to obstruct the street, and the defendant failed to prove as an affirmative defense that the bus was parked in compliance with the terms of a local ordinance. We held that it was a jury question whether the defendant exercised reasonable care in leaving the bus, without lights, on the street.

Here, the facts disclosed by plaintiffs' evidence are susceptible of but one inference, that Asay's negligence was the sole proximate cause of the accident. Therefore, there was no issue for the jury to decide. The evidence shows that Asay first saw the light of the

---

[1] Code § 46.1-248 provides in pertinent part:

"(a) No vehicle shall be stopped in such manner as to impede or render dangerous the use of the highway by others, except in the case of an emergency as the result of an accident or mechanical breakdown, in which case the emergency flashing lights of such vehicle shall be turned on if the vehicle is equipped with such lights and such lights are operating, and a report shall be made to the nearest police officer as soon as practicable and the vehicle shall be removed from the roadway to the shoulder as soon as possible and removed from the shoulder without unnecessary delay; and if said vehicle is not promptly removed, such removal may also be ordered by a police officer at the expense of the owner if the disabled vehicle creates a traffic hazard."

warning flare and reflectors when he was about a mile away; that he anticipated trouble but continued to operate his vehicle on the wet highway without any significant reduction in speed; that he saw the flashing light of the wrecker; that he disregarded the warning cries of two of his passengers as he approached a car in front of him; and that, after applying his brakes for 40 to 60 feet, he struck the rear end of the stationary Wadell car while still traveling at a speed of not less than 40 to 50 miles per hour. In addition to the four warning devices in the highway and the flashing light of the wrecker truck, all of which Asay admitted seeing, the evidence shows that the lights of the police car and of Wadell's car were also burning at, or nearly at, the scene of the accident.

Under these circumstances, it is immaterial whether Wadell was negligent in stopping on the highway, for the evidence compels the conclusion that any such negligence was a remote, rather than a proximate, cause of the collision. Plaintiffs, having failed to show that Wadell's negligence was a proximate cause of the accident, cannot recover. In *Virginia Stage Lines, Inc.* v. *Brockman Chevrolet, Inc.*, 209 Va. 188, 163 S.E.2d 148 (1968), we held that plaintiff had failed to show that the negligence of the bus driver in stopping his bus on the highway in violation of the applicable statute was a proximate cause of the accident, when the bus was lighted and stopped in plain view of approaching motorists. We reversed the judgment for plaintiff and entered final judgment for defendant. *See also Hubbard* v. *Murray*, 173 Va. 448, 3 S.E.2d 397 (1939), and *Roanoke Ry. & Electric Co.* v. *Whitner*, 173 Va. 253, 3 S.E.2d 169 (1939).

Accordingly, we hold that the trial court did not err in ruling that the sole proximate cause of the accident was Asay's negligence, and in entering summary judgment for Wadell.

*Affirmed.*