**Mable COOPER, Administratrix of the Estate of Orville T. Cooper, Plaintiff,**

v.

**INGERSOLL RAND COMPANY, et al., Defendants.**

**Civ. A. No. 84–0379–A.**

United States District Court,
W.D. Virginia,
Abingdon Division.

Feb. 25, 1986.

Charlie Jessee, Abingdon, Va., for plaintiff.

Adell Baker, Richmond, Va., Paul Drake, Fayetteville, W. Va., Stephen M. Hodges, Abingdon, Va., for defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, District Judge.

Plaintiff, Mable Cooper, a Virginia resident filed a wrongful death action against defendants alleging they negligently designed, manufactured, serviced and rebuilt the Lee Norse 245 Continuous Miner (miner) and breached express and implied warranties which proximately caused the death of her husband, Orville Terry Cooper on October 20, 1982. The named defendants are Ingersoll-Rand Company, a New Jersey Corporation, Lee Norse Company, the wholly owned subsidiary of Ingersoll-Rand Company which later became Ingersoll-Rand Mining Machinery Group, and Shaffer Equipment Company, a West Virginia corporation. The court has jurisdiction of this action pursuant to 28 U.S.C. § 1332. The case is now before the court on defendants' motions for summary judgment.

## I. FACTUAL BACKGROUND

Based on the pleadings, depositions, affidavits and other materials submitted by the parties, the essential facts in this case are undisputed.

Lee Norse built and sold its Model 245 Continuous Miner in 1973. The miner was returned to Lee Norse and rebuilt in 1976. Shaffer Equipment Company bought the miner in 1979 and sold it to Valor. Shaffer repossessed it and sold it to C.C. & P. Coal Company in November 1981. C.C. & P. operated a mine in Buchanan County, Virginia at that time. Problems with the miner arose during the time C.C. & P. used it and C.C. & P. electricians were able to make the repairs. The miner had been down for repairs up to four days prior to the accident. At that time it was believed that the trouble lay in the old insulation around the start-stop button in the control box on the operating deck. The wires would ground out at times causing the control switches to be ineffective. At the risk of oversimplifying, only three of the control mechanisms are pertinent to this case: (1) the on-off buttons near the ripperheads which control the pump motor, the conveyor motor and the rippers; (2) the on-off lever on the circuit breaker in the main control panel; and (3) the power center which connects the whole machine by electrical cable to the outside power terminal and transmission line. The miner was designed with a T–1 interlocking relay so that the ripperheads begin to rotate one and one-half (1½) seconds after the pump motor is started.

On the morning of October 20, 1982, the work crew arrived at the mine and began repairs under the direction of the foreman Rufus Baldwin who was a federally certified electrician. Baldwin directed Tim Elswick to disconnect the main power supply at the power center. Baldwin then removed the lid on the main control panel and repaired a methane monitor system. When the lid was replaced, the main circuit breaker operating lever was inadvertently positioned so that it did not connect with the main circuit breaker handle. Consequently the breaker lever was ineffective in controlling the current through the circuit breaker. The problem was not noticed at that time.

After this work was completed, the power cable was reconnected to the power center. Baldwin had directed Elswick, Gaudlin

and Cooper to begin their repair—tightening the ripperhead chain—while he and Rose were installing new insulation in the start-stop control switch. Rose started the pump motor and maneuvered the ripperhead to rest upon the mine floor. Moments later as Baldwin was removing the switch from its mounting, the rippers suddenly started. Cooper who was bent over the chain was caught and trapped by the rippers and was rolled around the ripperhead of the machine. Realizing what had happened, Baldwin and Rose tried to use the circuit breaker lever to stop the machine. It did not work, so Baldwin immediately sent Rose to disconnect the power at the power center. Before he reached it, Baldwin stopped the rippers by pushing the ripper control switch. Federal inspectors were called and they conducted an investigation into the fatal accident pursuant to the Mine Safety and Health Act (MSHA) regulations.

## II. PLEADINGS AND ISSUES

The complaint consists of four counts. The first count alleges that Ingersoll-Rand and Lee Norse improperly designed, manufactured and serviced the continuous mining machine and that Cooper was killed as a direct and proximate result of that negligence. The second count avers that by placing such a machine into the stream of commerce Ingersoll-Rand and Lee Norse created express and implied warranties of merchantability and fitness for the particular purpose for which the machine was intended to be used, and that such warranties extended to and were for the protection of the class of employees at C.C. & P. which included Cooper. Because of the alleged improper design, these warranties were breached. Count three charges that Shaffer Equipment Company negligently and carelessly overhauled and repaired the continuous miner and that as a direct and proximate result Cooper was killed. In count four plaintiff alleges that Shaffer breached express and implied warranties upon selling the allegedly negligently repaired miner to C.C. & P. Coal Company, Cooper's employer, and because Cooper re-

lied upon those warranties, his death was a direct and proximate result.

In their pleadings, the defendants contend that Cooper's death was caused by the acts and omissions of others for whom they are not responsible. Both defendants have set out five affirmative defenses to the negligence and breach of warranty counts. Both defendants have moved this court for summary judgment. All parties have submitted pleadings, discovery materials, briefs and interrogatories with answers thereto.

At the hearing on the motion, both defendants argued that there were three independent intervening causes which proximately lead to Cooper's death and thereby superseded any antecedent negligence on their part. First, the mine foreman violated mandatory federal safety regulations (30 C.F.R. §§ 75–509, 75.511 and 75.-1725(c)) by undertaking repairs on an energized mining machine. Defendants contend that under Virginia law this was negligence *per se*, and under the circumstances was an intervening and superseding cause of the accident precluding defendants' liability. Second, the miner had been substantially altered after it left defendant's (Ingersoll-Rand) control—specifically, that the T–1 relay system had been by-passed. Third, that the mine owner negligently permitted untrained personnel to work in the mine in violation of federal safety regulations and that was a proximate cause of the accident. Defendants point out that although Cooper was an experienced miner, he had been working at C.C. & P. for several weeks without having had the requisite federal training course, 30 C.F.R. § 48.6.

Plaintiff argued that the cause of the accident was the defective and improper design of the machine, specifically the main lever in the circuit breaker and the on-off switch near the ripperheads. Plaintiff contends that it was foreseeable that workers might undertake repairs on the mining machinery without first disconnecting it from the power center; if this were foreseeable

there could be no intervening superseding cause. Plaintiff further argued that the first act of negligence was defendant's (Lee Norse) improper design and but for that negligence the accident would never have occurred. Plaintiff maintains that to constitute actionable negligence, there must be a direct causal connection and such issue should be submitted to the jury.

The primary issue in this motion for summary judgment is whether, as a matter of law, defendants' alleged negligence and breaches of warranties were superseded by an independent and intervening act of negligence which proximately caused the fatal accident. Attendant to this issue are three legal points: (1) whether the failure to follow applicable federal safety regulations was negligence *per se;* (2) whether this act or omission was the proximate cause of the fatal accident; and (3) as a consequence, whether that act or omission was sufficient intervention in the course of events on October 20, 1982 to relieve both defendants of liability for their antecedent negligence.

### III. LEGAL ANALYSIS

The parties are in agreement that Virginia law applies in this action based on negligence. *See Erie Ry. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), *Graves v. Associated Transport,* 344 F.2d 894, 896 (4th Cir.1965).

### A. STANDARD FOR SUMMARY JUDGMENT

According to Fed.R.Civ.P. 56(c), summary judgment should be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." It is not the purpose of the hearing on a motion for summary judgment to resolve factual disputes. Rather, it is to determine whether there are factual issues to be tried. 6 J. Moore, J. Wicker, Moore's Federal Practice Part 2, ¶ 56.11[7] (2d ed. 1985).

The burden of showing both the absence of a genuine issue of fact and that judgment is warranted as a matter of law is upon the moving party. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The burden on the party opposing the motion to show the existence of a factual dispute is not fulfilled merely by asserting that a genuine issue exists for trial. *West v. Costen,* 558 F.Supp. 564, 574 (W.D.Va.1983). The rule in this circuit is that summary judgment

should be granted only where it is perfectly clear that *no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law.* And this is true even where there is no dispute as to the evidentiary facts in the case but only as to the conclusions to be drawn therefrom. (Emphasis added.) *Id.*

Summary judgment is inappropriate if there is any genuine factual issue or if there is any dispute over the reasonable inferences drawn from the undisputed facts in the record. *Morrison v. Nissan Motor Co.,* 601 F.2d 139 (4th Cir.1979). The inferences to be drawn from the facts contained in the record "must be viewed in a light more favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). *See Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir. 1979).

■ A cause of action based on negligence is usually submitted to the jury for resolution of questions of fact surrounding the allegations of negligence and proximate cause. However, *when the facts are undisputed and fair minded men could draw only one inference therefrom, negligence is a question of law to be determined by the court rather than by the jury.* (Emphasis added.) *See, Iotomasi v. Rhodes,* 407 F.2d 498 (4th Cir.1969). *See also Speer v. Kellam,* 204 Va. 893, 898–899, 134 S.E.2d 300 (1964) where the court stated that

it is only where the issue is one about which reasonable persons cannot differ—

the question so plain in the meaning and interpretation that should be given to it—that no doubt is admitted of its legal significance and effect, that it becomes a question of law for the courts to determine.... [i]t is elementary that each case must be determined on the facts and circumstances of the particular case.

For reasons stated below, the court finds the facts and circumstances of this case may be properly characterized as presenting questions of law for resolution by this court.

## B. STATUTORY STANDARD OF CARE

■ Under the Federal Coal Mine Health and Safety Act of 1969, 30 U.S.C. §§ 801 and 811, Congress declared that the purpose of the Act was to ensure the health and safety of miners, and provided that mandatory safety and health standards would be promulgated by the Secretary. Mine operators are required to be on alert to conditions and hazards affecting the safety of employees and to take the steps necessary to prevent such conditions. "Conduct which falls below a standard of care established under the Act is negligence." 30 C.F.R. § 100.3(d) (1985). This section imposes a high degree of care on mine operators to protect their employees. The federal regulations set out the safety standards with which mine operators and employees must comply.

Among the regulations pertinent to this case are the following. 30 C.F.R. § 75.509 which requires that *"all power circuits and electrical equipment shall be deenergized before work is done on such circuits and equipment ..."* (Emphasis added.) 30 C.F.R. § 75.511 requires that

no electrical work shall be performed on low-, medium-, or high-voltage distribution circuits or equipment, except by a qualified person or by a person trained to perform electrical work and to maintain electrical equipment under direct supervision of a qualified person. Disconnecting devices shall be locked out and suitably tagged by the persons who perform such work.

30 C.F.R. § 75.512 states that "when a potentially dangerous condition is found on electrical equipment, *such equipment shall be removed from service until such condition is corrected."* (Emphasis added.) "[R]epairs or maintenance shall not be performed on machinery until the power is off and the machinery is blocked against motion...." 30 C.F.R. § 75.1725(e) (1985). It is without question that the federal safety regulations apply to the activities carried out by C.C. & P. Coal Company. *See, Westmoreland Coal Co. v. Federal Mine Safety,* 606 F.2d 417, 420 (4th Cir.1979).

Although there is an absence of Virginia case law covering the types of regulations involved herein, it is likely that the court would give these regulations the same legal effect as is given to motor vehicle safety statutes. *Cf., Orthopedic Equip. Co. v. Eutsler,* 276 F.2d 455, 461 (4th Cir.1960), where the court found that violation of a federal food and drug regulation was negligence *per se* under Virginia law. *Cf., VEPCO v. Savoy Constr. Co.,* 224 Va. 36, 45, 294 S.E.2d 811, 817 (1982), violation of a building code is negligence *per se* in Virginia.

Cooper and the other mine workers were engaging in activity specifically covered by the federal regulations. Those regulations clearly spell out the standard of care to be used when repairing mining equipment. In light of the highly regulated nature of this business, it is inconceivable that the workers were unaware of the particular safety regulations discussed above. The mine owner knew that these regulations were mandatory, but could give no legitimate reason for the failure to follow those regulations. (Childress Dep. Tr. p. 88, 1. 4–14.)

The MSHA investigators listed specific safety regulations which had not been followed—the most pertinent being the failure to deenergize and lock-out the miner while repairs were being made. Under Virginia law, this is negligence *per se.* The MSHA report also discussed mechanical and electrical reasons for the ripperheads to begin

rotating, however, the court finds that these were merely circumstances and not the cause of the accident.[1]

In *Maroulis v. Elliott,* 207 Va. 503, 510, 151 S.E.2d 339, 344 (1966), the Court stated that under Virginia law,

> where a second tort-feasor becomes aware or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tortfeasor, and thereafter by an independent act of negligence brings about an accident, the *condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof.* The original negligence of the first tort-feasor is legally insulated by the intervening independent negligence of the second tort-feasor, and the latter becomes the sole proximate cause of the accident. (Emphasis added.).

The Virginia Supreme Court addressed the question of violation of a statute as the proximate cause of a fatal injury in the context of an automobile accident, *Hubbard v. Murray,* 173 Va. 448, 3 S.E.2d 397 (1939). The case involved an improperly stopped passenger bus and a negligent truck driver who hit both the bus and the decedent's car. On appeal, the court found, *id.* at 452, 3 S.E.2d 397, that "the negligence of the truck driver was the sole proximate cause of the accident and the fact that the bus was improperly stopped on the highway was merely a circumstance of the collision, or a remote cause thereof." The court held that the law of Virginia was that "the violation of a statute, while negligence *per se,* will not support a recovery for damages unless such violation proximately caused or contributed to the injury complained of.

## C. NEGLIGENCE PER SE

Generally, under the doctrine of negligence *per se* a standard of care, or duty, is created by a statute, ordinance or regulation so that violation thereof is negligence in itself. The burden of proving the existence of a particular duty on the part of the alleged tortfeasor is no longer on the party alleging breach and injury. The party alleging injury must show (1) that there was a statute or an ordinance; (2) that the injured party was within the class of persons for whose protection or benefit the statute was designed; (3) that the harm which occurred was the type of harm the statute was designed to protect against; and (4) that the violation of the statute must have been the proximate cause of the injury. *See, Hamilton v. Glemming,* 187 Va. 309, 316, 46 S.E.2d 438, 442 (1948). Under Virginia law, violation of a statute constitutes negligence *per se,* and if such negligence is a proximate or efficiently contributing cause of an injury, it will support a recovery for damages for such injury. *White v. Gore,* 201 Va. 239, 242, 110 S.E.2d 228, 231 (1959).

## D. PROXIMATE CAUSE

The rule in Virginia concerning causation is that an entirely independent, intervening wrongful act breaks the chain of causation and becomes the sole proximate cause of the accident and supersedes the antecedent negligence of a defendant. *Roanoke Ry. & Elec. Co. v. Whitner,* 173 Va. 253, 3 S.E.2d 169 (1939). In Virginia, "an intervening cause in order to relieve a person charged with negligence in connection with an injury must be a negligent act, or omission, which constitutes a new effective cause and operates independently of any other act, making it and only it the proximate cause of the injury." *Maroulis, id.,* 207 Va. at 510–16, 151 S.E.2d 339.

The Fourth Circuit recently addressed the issue of intervening and superseding negligence in a case arising in South Carolina in which plaintiff asserted this doctrine as a defense against defendant's

---

**1.** It appears to the court that the doctrines of assumption of risk (upon Cooper's part) and contributory negligence (upon the mine foreman's part) would effectively operate to relieve defendants of liability. However, satisfaction of the "but for" test is not sufficient at this point. *See Simpson v. Lambert Bros. Div.,* 362 F.2d 731 (4th Cir.1966).

claim of contributory negligence, *Rawl v. United States*, 778 F.2d 1009 (1985).[2] In its analysis the court listed several considerations to be examined before deciding whether an intervening cause should be called superseding. Those considerations were: (1) whether the harm caused was different in kind from that which would have followed from defendant's negligence; (2) whether the operation or the consequences of the intervening cause appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation; (3) whether the intervening force acts independently of the situation or is a normal part of the situation; and (4) whether the intervening cause is a third party's action or omission. The latter two considerations are particularly applicable to the case *sub judice*.

In Virginia, the question of what is proximate cause is normally one for the jury to determine. But when the facts are not disputed and are susceptible of but one inference, the question becomes one of law for the court. *See Hubbard v. Murray, supra*.

The Fourth Circuit in *Spruill v. Boyle-Midway*, 308 F.2d 79, 86 (1982) relied on Virginia law in stating that

> a jury question is presented whenever reasonable men might properly draw different conclusions from the evidence, or if the conclusion properly to be drawn depends upon the weight to be given to the evidence.... *A question may be taken from the jury and decided by the court only where a single conclusion or inference may be drawn from the evidence.* (Emphasis added.)

The court finds that the evidence in the case *sub judice* presents questions which may properly be resolved by the court rather than by the jury. Based on the analysis of relevant law and principles, the court finds that the direct and proximate cause of Cooper's death was the failure to de-energize the mining machinery before undertaking repairs. The alleged improper design and any negligence possibly involved in manufacture and rebuilding is merely a circumstance of the accident and at best only a remote cause thereof. It is clear, however, that the mandatory safety regulations were not followed and that such negligence was an entirely independent act which the defendants neither brought about nor had control over. The court finds that reasonable minds could not differ in reaching this finding in light of the undisputed evidence and applicable legal principles.

It would be utter sophistry to say that a simple "but for" test is sufficient in these circumstances to determine liability or to say that (despite the federal regulations) because it was foreseeable that employees would rely on the various control switches, that the defendants had a duty to design a perfectly safe machine. It is arguable that there were contributing factors to the accident, however, the crucial fact is that a negligent omission occurred in the course of events which intervened and superseded all, if any, antecedent negligence on defendants' part.[3]

## E. BREACH OF WARRANTY

Plaintiff has put forth claims for breaches of express and implied warranties of fitness and merchantability. From a re-

---

**2.** Decedent attempted a night time landing of his small plane during bad weather at the Grand Strand Airport. He was flying by sight rather than by instrument. As he approached the airport there was a miscommunication by the air traffic controller. Corrective instructions were given moments later. The pilot became disoriented and the plane crashed. The district court found RAPCON had violated a section of the Air Traffic Control Manual and rejected the government's defense of contributory negligence on the decedent's part and found RAPCON's negligence was the intervening and superseding cause of the accident. The Fourth Circuit found that the district court had misapplied the doctrine of intervening cause.

**3.** Perhaps had the accident occurred during the course of normal mining activity, the result in this case would most likely have been different. However, the obvious fact is that without an electrical current running through the mining machine the ripperheads would not rotate.

view of the record, and based upon the law of sales in Virginia, Va.Code §§ 8.2–313, 315 (1950), there is no evidence to even suggest that defendants made express warranties concerning the mining machine, nor is there any basis to the claim that defendants' machine was under an implied warranty of fitness for a particular purpose. Therefore, the following discussion will concern only the implied warranty of merchantability.

The implied warranty of merchantability is said to arise at the time the product is sold to the purchaser. It runs from the seller to the purchaser and then on to the ultimate user. However the user can have no greater claim to the warranty than the purchaser through whom he obtained the implied warranty. *Goodbar v. Whitehead Bros.*, 591 F.Supp. 552, 567 (W.D.Va.1984) citing, *Bly v. Otis Elevator Co.*, 713 F.2d 1040 (4th Cir.1983), and *Fischbach & Moore Intern. v. Crane Barge R–14*, 632 F.2d 1123 (4th Cir.1980).

Under Virginia law, as cited by the Fourth Circuit in *Bly v. Otis Elevator Co.*, at 1042–43, manufacturers and sellers of defective products can be held liable on theories of negligence and breach of the implied warranty of merchantability. The standard of safety of goods is essentially the same whether the theory of liability is labeled warranty or negligence. *Logan v. Montgomery Ward*, 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975).

When a plaintiff seeks to recover for breach of implied warranty of merchantability (or fitness for a particular purpose), plaintiff must show (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands. *Logan, id., Accord, Chestnut v. Ford Motor Co.*, 445 F.2d 967, 968 (4th Cir.1971), *Featherall v. Firestone*, 219 Va. 949, 963–64, 252 S.E.2d 358, 367 (1979), *Southern States Co-op. v. Doggett*, 223 Va. 650, 657, 292 S.E.2d 331, 335 (1982). Under Virginia law breach of warranty may be established by circumstantial evidence, but the evidence must be sufficient to establish that the result alleged is a probability rather than a mere possibility. *Southern States Co-op., id.* Therefore, plaintiff carries the burden of proving that the miner was defective when it left defendants' control and that such was the proximate cause of plaintiff's injuries.

Besides the allegations in the complaint, plaintiff incorporated particular sections of the MSHA report of the fatal accident into her answers to defendant Shaffer's interrogatories concerning the defective condition of the miner. Specifically, plaintiff relies on paragraphs 4. and 5. of the findings of fact to draw the inference that the miner was defectively designed, manufactured and serviced, and that such condition proximately caused Cooper's death.[4]

As plaintiff pointed out in her brief, it is uncontested that the circuit breaker operating lever was not engaged to the main circuit breaker handle and that there was no way to determine if the circuit breaker was on or off. Plaintiff argues that the mine workers foreseeably relied on this lever. Plaintiff further argues that the "start-stop push button switch system was defectively designed in that the panel housing for said system was too restrictive and did not provide adequate space for the electrical devices contained in said housing."

In his deposition, Arland Childress, owner of C.C. & P. Coal Company, stated that the machine had operated properly the first

---

**4.** The control switch for the 3 phase main circuit breaker on the Lee-Norse 245 continuous mining machine on the 001 section was not maintained in a safe operating condition. The circuit breaker operating lever was not engaged to the main circuit breaker handle and there was no way to determine if the circuit breaker was on or off or no way to turn the circuit breaker on or off. A violation of Section 75.-1725(a), Title 30, CFR. The Lee-Norse continuous mining machine on the 001 section was not maintained to assure safe operating conditions. The T–1 interlocking relay was bypassed which enabled the conveyor and ripperhead motors to be started without first starting the pump motor. A violation of Section 75.512 Title 30, CFR.

time it was started. However, the miner malfunctioned the next time it was started,[5] in that the conveyor and ripperheads started simultaneously with the pump motor. This problem was corrected, and Childress stated that they never had another problem with the ripperheads.[6] Throughout his deposition Childress indicated that only C.C. & P.'s electricians had made the various repairs on the miner and that no other repairmen had worked on the miner since C.C. & P. took delivery of it.

There is evidence that the T–1 interlocking relay system, which MSHA investigators determined had been bypassed, was in good working order after the miner was rebuilt in 1976 and upon delivery to C.C. & P. in 1981. (Affidavits of Victor Weintraub, Robert Parrish, and Frank Lanier.). Childress was unable to recall who, if anyone, had done the wiring on the T–1 relay.

The court finds that the record contains inconclusive evidence of whether or not the miner was defectively designed, manufactured and rebuilt. The court is unable to determine whether defendants met the standard of safety for goods as described in *Logan v. Montgomery Ward Co., supra.* However, the evidence definitely *does not* establish that this alleged defective condition was a probable cause or a proximate cause of Cooper's death. The actual condition of the miner has no bearing on defendants' liability under the particular circumstances because there was an intervening act of negligence which was the proximate cause of the accident.

The plaintiff has not made out an actionable claim of negligence concerning breach of implied warranty of merchantability. The court finds that reasonable minds could not differ in concluding that the proximate cause of the accident was the failure to disconnect the miner from the power source before undertaking repairs. At the hearing plaintiff argued that but for the defective condition of the miner the accident would not have occurred. However, in these circumstances federal regulations clearly applied, and had those regulations been complied with, the accident would not have happened. It is clear to this court that this negligence directly and proximately lead to Cooper's death and superseded the negligence, if any, of defendants.

## IV. CONCLUSION

It is clear to the court that there are no genuine issues of material fact remaining which would affect the outcome, nor are there any doubts as to the legal significance of the undisputed evidence in this case. Mining activities are subject to mandatory federal safety regulations which specifically inure to the benefit of miners. Failure to follow those regulations is negligence *per se.* Under these circumstances, the third parties' act, or omission, was an intervening act which proximately caused Cooper's death. Whether or not defendants' actions were a remote cause of the accident is irrelevant because their negligence, if any, was superseded by the acts of third parties. For these reasons cited above, defendants' motions for summary judgment are granted and the case is dismissed.

---

**5.** (Childress Dep. Tr., 12–18–84, p. 36, 1. 24–25, p. 37, 1 1–6).

**6.** (Childress Dep. Tr., 4–22–85, p. 46, p. 60, 1.19).