**George M. COLES, Jr., as Personal Representative of the Estate of Donald E. Egan, and Emilie C. Egan, Plaintiffs,**

**v.**

**William Harold JENKINS,[1] Travel Ventures Ltd. d/b/a Vermont Bicycle Touring, Defendants.**

**No. CIV.A. 97–0031–C.**

United States District Court, W.D. Virginia, Charlottesville Division.

Dec. 10, 1998.

---

1. By this court's 4 November 1998 Order and pursuant to a stipulation of dismissal, defendant Jenkins was dismissed with prejudice as a party to this case.

John Randolph Parker, Parker, Mcelwain & Jacobs, PC, Charlottesville, VA, Richard J. Phelan, James D. Dasso, Dianne L. Hicklen, Foley & Lardner, Chicago, IL, for George M. Coles, Jr., Emilie Egan.

Glen Michael Robertson, Marshall Allen Winslow, Jr., Payne, Gates, Farthing & Radd, P.C., Norfolk, VA, Rodney E. Gould, Rubin, Hay & Gould, P.C., Framingham, MA, for Travel Ventures, Ltd.

## MEMORANDUM OPINION

MICHAEL, Senior District Judge.

Before the court are the defendant Travel Ventures, Ltd. d/b/a Vermont Bicycle Touring's ("VBT") 21 August 1998 Objections to the Magistrate Judge's 6 August 1998 Report and Recommendation and the plaintiffs' 29 September 1998 Response to defendant's objections. Defendant VBT also filed a 19 October 1998 Reply to plaintiffs' response to its objections. This court heard oral argument on the objections to the Magistrate's Report on 9 November 1998. The Report and the resulting objections and responses pertain to the parties' cross-motions for summary judgment. For the reasons expressed herein, the court will overrule the defendant's objections and adopt the recommendations of the Magistrate Judge that defendant VBT's motion for summary judgment be denied and that plaintiffs' motions for summary

judgment on VBT's defenses be denied.[2] The court will dismiss as moot all motions by and concerning defendant Jenkins, who is no longer a party to this case.[3]

## I.

### A. Factual Background [4]

On 4 October 1996, Vermont Bicycle Touring ("VBT") led and supervised a "Virginia Horse and Wine Country" tour from Charlottesville. VBT set the tour itinerary and its employees, Leslie Hoyt and Bob Rauch, acted as tour guides. Donald and Emilie Egan of Chicago, both attorneys by training who had never been to Charlottesville, were members of the tour group, using bikes rented from VBT.

On Sunday, 6 October VBT planned for the tour group to cycle from Charlottesville to Gordonsville. VBT directed the group to travel on Routes 615 and 231 until Route 646. In the written schedule given to participants, VBT cautioned riders that on Route 231, "traffic may be heavy and the shoulder is narrow." The summary of that day's ride warned, "be prepared for some sections that have a narrow shoulder and will be busy with traffic. Please feel free to hop in the van for a shuttle to avoid these sections."[5] Leslie Hoyt reviewed the route for the day with participants, making mention of Route 231 and repeating the invitation to ride in the van if uncomfortable. VBT requires all tour participants to sign a "Release of Liability Agreement," which the Egans signed. Signing the release acknowledges reading the attached "Rules of Bicycling Safety," which begin "Dear Cyclist—Bicycle touring has its inherent risks." Riders were advised to wear bright clothing and each bike was equipped with orange flags mounted on poles. The Egans complied with these rules at all times during their participation.

At about 11:45 a.m. after the Egans had been traveling on the right hand side of the northbound lane of Route 231 for seven-tenths of a mile, defendant William Jenkins struck Mr. Egan with his pick-up truck. Mrs. Egan was also struck, either by Mr. Egan or by Jenkins' truck. Mr. Egan suffered a broken neck and died at the scene. Mrs. Egan suffered serious injuries necessitating hospitalization for several days.

Mr. Jenkins admitted in discovery—and Dr. Edgar Lawson who examined Jenkins shortly after the accident confirmed—that as of the date of the accident, Jenkins could not legally drive an automobile due to vision so poor he was legally blind. According to Jenkins' own admissions, his legal guardian, Peter McIntosh, had confiscated Jenkins' driver's license prior to the accident and instructed him not to drive or leave the house on his own. Jenkins also admitted that the Circuit Court for the County of Albemarle determined that Jenkins was not mentally competent to stand trial in the criminal case brought against him for the death of Donald Egan.[6]

At the time of the accident, the weather

---

**2.** Pursuant to 28 U.S.C. § 636(b)(1)(B), the court, by Standing Order, referred this matter to the Honorable B. Waugh Crigler, United States Magistrate Judge, for proposed findings of fact and a recommended disposition, subject to *de novo* review by this court pursuant to *Orpiano v. Johnson*, 687 F.2d 44, 48 (4th Cir.1982).

**3.** The Report makes recommendations for the disposition of motions concerning defendant Jenkins. These recommendations will not be addressed because the underlying motions are moot.

**4.** VBT submitted a "Statement of Undisputed Material Facts" with its Motion for Summary Judgment. Plaintiffs filed a summary of what they consider to be "misrepresented facts" in VBT's statement. Plaintiffs "corrections of testi-

mony" were duly noted in preparing this summary of the facts. Because the court is herein considering mainly defendant VBT's motion for summary judgment, the facts must be viewed in the light most favorable to plaintiffs. Therefore, where there were disagreements between VBT's experts' testimony and the opinions of plaintiffs' expert and Albemarle County officials, the greater weight was given to the statements of plaintiffs' expert and Albemarle County officials.

**5.** Plaintiffs concede that the van did follow behind the group, but Mrs. Egan assumed that there was no room for her on the day of the accident because one person was riding in the van already, along with food and luggage.

**6.** Plaintiffs contend that this information is not admissible at trial.

was clear and traffic was light to medium.[7] William Holt, who was driving immediately behind Jenkins, described Jenkins' driving as "meandering" and said he was driving below the speed limit of 55 m.p.h. and "veering more to the right side of the road and then...across the center divide on the road," thereby preventing other motorists from passing. Independent experts determined that the Egans were visible from about 483 feet or more at the time they were struck. Holt said they were "clearly visible," but that Jenkins "veered immediately into them;" "apparently he didn't see them or whatever and he plowed right into them." An Albemarle County accident reconstruction team found no skid marks at the scene and there is no evidence that there was any oncoming traffic at the time of the accident.

### B. Procedural Background

On April 8, 1997, the personal representative of Mr. Egan's estate and Mrs. Egan filed the instant action. Plaintiffs, by Consent Order of July 31, 1997, filed their First Amended Complaint on the same day. The personal representative brought COUNT I, wrongful death, against defendants Mr. Jenkins and VBT. Mrs. Egan brought COUNT II, negligence resulting in personal injuries, against both defendants. Both counts recite the usual elements—duty, breach, causation, and damages—necessary to state the negligence-based causes of action.

On 25 August 1997, defendant VBT filed a Motion to Dismiss or for Summary Judgment on the grounds that: (1) plaintiffs assumed the risk of their injuries and (2) VBT, as a matter of law, bears no liability for the criminal or negligent actions of third parties, such as Mr. Jenkins. By this court's 22 December 1997 Order and Memorandum Opinion adopting the Magistrate Judge's 24 November 1997 Report and Recommendation, the motion to dismiss was denied.

Discovery proceeded and a well-developed record is now before the court. VBT has renewed its motion for summary judgment on the grounds that: (1) there has been no showing of proximate cause of the accident by any negligence on VBT's part (arguing rather that Jenkins' actions superseded any negligence by it as the proximate cause); (2) tour operators are not responsible for criminal or negligent conduct of third parties; (3) there is no showing that VBT was negligent in any respect other than as a tour operator; (4) plaintiffs assumed the risk of their injuries, and (5) VBT had no duty to guarantee a trip free from harm by third parties.

On 23 July 1998, the magistrate judge heard arguments on the motions for summary judgment. In his ruling from the bench and in his supplemental findings filed 6 August 1998, Judge Crigler recommended denying defendant VBT's motion for summary judgment, denying plaintiff's motion for partial summary judgment on VBT's defenses of contributory negligence and assumption of risk, denying the motion for summary judgment filed by defendant Jenkins, and granting plaintiff's motion for summary judgment as to defendant Jenkins' liability. In its 21 August objections, defendant VBT finds fault with the magistrate's report in three main regards: (1) proximate cause (whether VBT's road selection was a proximate cause along with Jenkins' actions and whether Jenkins' actions constitute a superseding cause); (2) the legal effect of the release signed by plaintiffs; and (3) denial of summary judgment as to VBT's defense of assumption of risk. Plaintiffs responded to these objections and defendant VBT replied to plaintiffs' response. At defendant VBT's request, the court scheduled oral argument on the objections, which was heard on 9 November 1998. On 4 November 1998, the court endorsed the dismissal order signed by all parties dismissing defendant Jenkins with prejudice.

### II.

#### A. Standard for Summary Judgment

Summary judgment is appropriate only after the parties have had reasonable opportunity to conduct discovery. Under Fed.

---

**7.** Mrs. Egan described it as light; tour leader Hoyt described it as medium; Albemarle County police described it as light.

R.Civ.P. 56(a)-(b), both claimants and defendants are allowed to move for summary judgment. According to Fed.R.Civ.P. 56(c), summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

In considering a motion for summary judgment, the court should view the evidence and affidavits of the parties in light of the pleadings, drawing all facts and inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Charbonnages de France v. Smith*, 597 F.2d 406 (4th Cir. 1979). The non-moving party is entitled to have the credibility of all its evidence presumed. *See Miller v. Leathers*, 913 F.2d 1085, 1087 (4th Cir.1990), *cert. denied*, 498 U.S. 1109, 111 S.Ct. 1018, 112 L.Ed.2d 1100 (1991). Before the non-moving party must face the burden of demonstrating the existence of a triable issue of fact, the movant must meet its burden of showing the absence of evidence to support the non-movant's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393–394 (4th Cir.1994).

However, a party opposing a motion for summary judgment that is well-supported "may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). There must be more than a "scintilla" of evidence to support the non-movant's case. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Rather, the evidence must be sufficient to "return a verdict" at trial for the party opposing the entry of judgment. *See id.* The non-moving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir.1985); *see also Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Moreover, the existence only of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion. *See Thompson Everett, Inc. v. National Cable Adv.*, 57 F.3d 1317, 1323 (4th Cir. 1995) ("[I]f the evidence is 'merely colorable' or 'not significantly probative,' it may not be adequate to oppose entry of summary judgment.").

**B. The Standard Applied to VBT's Motion for Summary Judgment and Objections**

*1. Proximate Cause*

■ VBT contends that the Plaintiffs have made no showing that any negligence on VBT's part was the proximate cause of the accident and resulting death of Mr. Egan and injuries to Mrs. Egan. Virginia courts, and the Fourth Circuit in applying Virginia law, have on occasion held that a tortfeasor was relieved from liability as a matter of law when the intervening act of a third party was extraordinary and unforeseeable, so as to become the sole proximate cause of injury. However, courts in Virginia have consistently held that whether an intervening act was so extraordinary as to supersede any prior act of negligence as the proximate cause is usually a question for the jury.

■ Assuming *arguendo* that VBT was negligent in selecting to use the portion of Route 231 where the accident on October 6, 1996 occurred, the question becomes whether that negligence—selecting an unreasonably dangerous road—was the proximate cause of the accident or simply a circumstance or remote cause of the accident. The Western District of Virginia, quoting the Virginia Supreme Court, has said:

> where a second tort-feasor becomes aware or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter by an independent act of negligence brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proxi-

mate cause thereof...the latter becomes the sole proximate cause of the accident. *Cooper v. Ingersoll Rand Co.,* 628 F.Supp. 1488, 1493 (W.D.Va.1986) (Judge Williams, quoting *Maroulis v. Elliott,* 207 Va. 503, 151 S.E.2d 339, 344 (Va.1966); holding that the failure of a coal company to deenergize a machine it operated while repairs were being made was the intervening and superseding cause of a worker's death so that those responsible for any defect in the machine were not liable).

■ Whether a second tort is intervening and superseding rather than concurrent depends on analysis of a number of factors. Some of the considerations include:

(1) whether the harm caused was different in kind from that which would have followed from defendant's negligence; (2) whether the operation or the consequences of the intervening cause appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation; (3) whether the intervening force acts independently of the situation or is a normal part of the situation; and (4) whether the intervening cause is a third party's action or omission.

*Cooper,* 628 F.Supp. at 1494 (citing *Rawl v. United States,* 778 F.2d 1009 (4th Cir.1985)). *See also* Restatement (Second) of Torts § 442 (1965) (list of considerations in determining whether an intervening force is a superseding cause, including the four factors listed in *Cooper* ).[8] In addition, courts have also considered whether the original tortfeasor's act "set in motion" a sequence of events ultimately leading to the accident, *see Miller v. Union Pac. R. Co.,* 290 U.S. 227, 235, 54 S.Ct. 172, 78 L.Ed. 285 (1933); or whether

the intervening act was "put into operation by the defendant's wrongful act." *See Coleman v. Blankenship Oil Corp.,* 221 Va. 124, 267 S.E.2d 143, 146 (Va.1980) (holding that because highway department's presence was necessitated by oil company's spill, oil company was liable for accident caused when motorist was directed by highway department official to drive around highway department's truck and into lane where oil had spilled).

■ In addition, distinguishing between an intervening cause that is superseding and one that is concurrent often boils down to whether the intervening act should have been foreseen. *See, e.g. Norfolk Shipbuilding & Drydock Co. v. Scovel,* 240 Va. 472, 397 S.E.2d 884, 886 (Va.1990). An act is foreseeable if it is more than a mere possibility:

a wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable according to ordinary and usual experience.

...The danger therefrom must have been such as is recognized by common experience or by the special experience of the actor.

*Id.* at 885–886. "To be a superseding cause, ...it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's contributory negligence thereto, in the slightest degree, produces the injury." *Scott v. Simms,* 188 Va. 808, 51 S.E.2d 250, 253–54 (1949). Defendant's negligence can be a proximate cause even if the "precise injury that happened" could not have been foreseen, if "an ordinary, careful and prudent person ought, under the circumstances, to have foreseen

---

8. Virginia courts have often cited with approval the Restatement. One of the illustrations accompanying § 442B highlights the difficulty facing defendant in proving that another actor's negligence was superseding such that defendant is relieved from liability: "The A Telephone Company negligently allows its telephone pole, adjoining the public sidewalk but several feet from the street, to become riddled with termites, thus creating the risk that the pole will fall or be knocked over and so injure some person using the sidewalk. An automobile negligently driven by B at excessive speed leaves the highway, comes up on the sidewalk, and knocks the pole over. It falls up[on] C, a pedestrian on the

sidewalk, and injures him. A is subject to liability to C." One could add that despite the fact that automobile driver was negligent, and the possible inference that the driver's negligence alone would have caused the accident even without the Telephone Company's negligent maintenance, the burden for showing superseding cause has not been met. The next illustration may also be of assistance: "The same facts as in Illustration 3, except that the pole is knocked over by a cow's bumping into it. The same result." Illustration 4 shows that even if the event seems almost bizarre (a cow bumping into a telephone pole or a blind man driving), it may not be superseding.

that *an injury* might probably result." *Id.* at 254 (emphasis added).

▨ Proximate cause is ordinarily a question that goes to the jury, unless the facts in the case are "susceptible of but one inference," and therefore there is no issue for the jury to decide. *See Riggle v. Wadell,* 216 Va. 577, 221 S.E.2d 142, 145 (Va.1976) (holding that the driver of a car stopped on a road so as to block the lane was not liable for the accident caused by another driver's failure to reduce his speed and go around the stopped car because the latter's negligence was the sole proximate cause of the accident).[9] Whether or not a defendant's negligence proximately caused an accident "becomes a question of law only when the evidence is such that there can be no difference in the judgment of reasonable men as to the inferences to be drawn from it." *Scott,* 188 Va. 808, 51 S.E.2d at 253. Furthermore, whether or not one cause supersedes another as the proximate cause of an accident is not a determination that is subject to any *per se* rules. *See, e.g., Powell v. Drumheller,* 539 Pa. 484, 653 A.2d 619 (Pa.1995) (violation of statute criminalizing drunk driving does not constitute a superseding cause in every situation; proper focus is on whether act was extraordinary, nor just criminal).[10]

▨ The facts in this case are not so clear that the jury should be denied its proper role in determining proximate cause. Weighing the four factors listed in *Cooper* does not lead inexorably to the conclusion that Jenkins' act of negligence superseded any negligence of VBT. The first factor—whether the kind of harm that occurred is the same kind as one would expect as a result of the first party's negligence—certainly supports plaintiffs' claim. The result one could reasonably expect from selecting an unduly dangerous road for a bike tour is that a driver of a motor vehicle (particularly a negligent driver) would strike one of the bicyclists. The second factor—whether the *operation or the consequences* of the intervening cause appear after the event to be extraordinary rather than normal in view of the circumstances existing at the time of its operation—invites reasonable arguments from both sides. As the added emphasis indicates, however, the court should look not to the *nature* of the intervening cause itself and ask whether it was extraordinary, but to the *operation or consequences* of that intervening cause. Jenkins' act of driving when legally blind and unauthorized to drive does seem unusual, but it operated in the same manner and had the same consequences as would a more ordinary act of reckless driv-

9. The defendant relies heavily on a line of cases which, like *Riggle,* determined that an intervening act of a second tortfeasor superseded the negligence of a first tortfeasor, namely *Hubbard v. Murray,* 173 Va. 448, 3 S.E.2d 397 (1939) (where truck driver had a clear and unobstructed view for four hundred feet of bus stopped unlawfully on the highway but failed to stop and drove his truck into the bus, the truck driver was the sole proximate cause of the accident and the fact that the bus was unlawfully stopped was a mere circumstance or remote cause); *Roanoke Ry. & Elec. Co. v. Whitner,* 173 Va. 253, 3 S.E.2d 169 (1939) (similar to *Hubbard*); *Banks v. City of Richmond,* 232 Va. 130, 348 S.E.2d 280 (1986) (city's failure to cut off gas at meter was superseded by repairman's act of searching for gas leak in oven using a cigarette lighter so that city was not liable for resulting explosion). Plaintiffs' response to this line of cases, particularly those involving automobile accidents where one motorist is stopped on the road and another motorist fails to avoid the stopped vehicle, is that the cases are not applicable because they involve "totally different factual circumstances." *See* Response to VBT's Motion for Summary Judgment at 23.

In oral argument and in its reply to plaintiffs' response to its objections, defendant emphasized an unpublished Fourth Circuit decision, *Gallagher v. Kline Imports,* 133 F.3d 914, 1998 U.S.App. LEXIS 869 (Ex. A to VBT's 19 October 1998 Reply) (a driver's act of mistakenly applying the accelerator instead of the brake was the sole proximate cause of the driver hitting a pedestrian and the negligent maintenance of the parking lot where the accident occurred was not a proximate cause). Like the other cases cited by defendant, *Gallagher* is distinguishable. The Fourth Circuit's decision in *Gallagher* to affirm the court below in granting summary judgment was predicated on the finding that reasonable minds could not differ on the inferences to be drawn from the facts. *As discussed above,* reasonable minds could differ on the inferences to be drawn in this case.

10. The only bright line rule that has won wide acceptance is that an intervening act that is an *intentional* tort and is not within the scope of the risk created by the original tortfeasor supersedes the original tort. *See* Restatement of Torts § 442B (1965).

ing, for example, a drunk or distracted driver striking the bicyclists due to his impairment.

Likewise, the third factor—whether the intervening force acts independently of the situation or is a normal part of the situation—has inspired vigorous debate by the parties. Plaintiffs claim that the inherent dangerousness of the road operated in concert with Jenkins' negligence to cause the accident. Defendant claims that Jenkins would have been a danger on any road. But defendant cannot prove this assertion; it is merely one inference that could be made. Other reasonable inferences could also be made based on these facts. While there is very little direct evidence to prove that any particular characteristic of the road contributed to the accident, a reasonable trier of fact could infer from the facts and circumstances here that on a different, safer road, something might have been done (either by Jenkins or by plaintiffs) to avoid this accident. In that sense, Jenkins' act of running into the bicyclists did not operate entirely independently of the act of VBT in selecting a road that lacked a shoulder, had a ditch immediately adjacent to the edge of the road, and was unsafe in any of a variety of other ways. The fourth factor is the only one which clearly points in defendant VBT's favor: the intervening cause here was certainly a third party's action or omission.

In sum, the *Cooper* factors add up to a zero score for defendant VBT in its contest to claim that any negligence on its part was superseded: one factor in favor, one factor against, and two factors that can fairly be characterized as indicating a tie. This result hardly compels the court to rule as a matter of law that Jenkins' negligence was superseding. Rather, the closeness of the question commends it as the very kind that should properly go to a jury. The accident arose from a continuous flow of events: defendant directed plaintiffs to ride on a road that may have been unreasonably dangerous for bicycle traffic, giving rise to the foreseeable risk

that they might be struck by a motorist; plaintiffs were struck by a motorist causing Mr. Egan's death and Mrs. Egan's injuries. The motorist's act of driving when legally blind and prohibited from doing so is not so totally independent from VBT's actions as to warrant summary judgment when there is such a flow of events.[11]

### 2. Effect of the Release Signed by Plaintiffs

■ VBT objects to the Magistrate's finding that the Egans' signing of a Release has "no force and effect." Plaintiffs respond that this court's 22 December 1997 opinion already determined as the law of the case that, for purposes of demonstrating assumption of risk, Virginia law is "abundantly clear that pre-injury exculpatory clauses in contracts are void as against public policy." The court will not revisit its ruling on this question.

However, the court has yet to rule on the question of admissibility of the release at trial. VBT would use the release to show that VBT did not guarantee the safety of its participants from dangers posed by third parties. Case law supports use of exculpatory agreements for this limited purpose. *See e.g. Lavine v. General Mills,* 519 F.Supp. 332 (N.D.Ga.1981), *Connolly v. Samuelson,* 671 F.Supp. 1312 (D.Kan.1987), *Ramage v. Forbes Int'l. Inc.,* 987 F.Supp. 810 (S.D.Ca. 1997), *Loeb v. United States,* 793 F.Supp. 431 (E.D.N.Y.1992). While none of these cases cited by VBT is binding on this court, they do indicate that exculpatory agreements may be used as evidence of an understanding by plaintiffs of the risks, one part of the showing necessary to find assumption of risk. The Magistrate's comments on the legal effect of the release should not be construed as dispositive on evidentiary questions such as admissibility. The court will refrain from ruling on this issue until the motions in limine are properly before it.

---

11. VBT's argument that it cannot be held responsible for the acts of third parties is adequately addressed by the discussion of the merits of the summary judgment motion in general. Plaintiffs' answer to this argument is also sufficient to allow the question to go to the jury: plaintiffs

seek not to hold VBT responsible for Jenkins' actions but for its own negligence, viewing each as *a* proximate cause of the accident. Indeed, plaintiffs pursued their claims against defendant Jenkins until a settlement was reached.

### 3. Assumption of the Risk

Cross-motions for summary judgment were filed by plaintiffs and VBT on VBT's defense of assumption of risk by plaintiffs. VBT has a solid argument based on well-settled law in Virginia that a plaintiff cannot recover for injuries suffered from a risk which he assumed. *See, e.g., Amusement Slides v. Lehmann,* 217 Va. 815, 232 S.E.2d 803 (1977). However, plaintiffs also present evidence supporting their claim that plaintiffs could not possibly have assumed the risk of riding on route 231. A finding of assumption of the risk requires that two elements be met: a plaintiff must have fully appreciated the nature and extent of the risk and the risk must have been voluntarily incurred. *See Stevens v. Ford Motor Co.,* 226 Va. 415, 421, 309 S.E.2d 319 (1983). Because these findings are so heavily fact-based, assumption of risk is a question more properly left to a jury.

The evidence cited by VBT to support its defense of assumption of risk is certainly substantial. In addition to the release, VBT points to several additional facts which demonstrate a manifest intent by the Egans to assume the risks inherent to cycling on Route 231. Both written and oral warnings on October 6 put plaintiffs on notice of possible dangers by indicating to the Egans that Route 231 might possibly have heavy traffic and narrow road shoulders. In addition, the Egans had first-hand knowledge of the apparent dangers of Route 231 (the volume of traffic, the width of the shoulder, and all the factors which Plaintiffs claim made the road unreasonably dangerous were readily apparent) for the time it took them to ride seven-tenths of a mile,[12] yet they continued to ride. A jury might infer the elements of assumption of risk from the fact that Mrs. Egan declined the company's offer to ride in the van provided. The inference could also be made from the testimony of Leslie Hoyt that Mrs. Egan told Hoyt on the day of the accident that she had not waited for the van prior to getting on Route 231, even though she knew of its nature, because she wanted to ride and "went for it." Hoyt Tr. P. 120. This is precisely the meaning of assumption

of risk: venturousness. *See Arndt v. Russillo,* 231 Va. 328, 343 S.E.2d 84, 86 (Va.1986). However, the defense of assumption of risk is typically a determination properly left to the jury.

Summary judgment on VBT's defense of assumption of risk is inappropriate because facts material to this issue are still in dispute. Assumption of risk involves a subjective determination of "what particular plaintiff in fact sees, knows, understands and appreciates." *Amusement Slides,* 217 Va. 815, 232 S.E.2d 803, 805. This is perhaps the crucial material fact in dispute in this case: whether or not the Egans understood the risks of Route 231 fully and whether they voluntarily chose to assume them. While VBT points to significant evidence that the Egans understood the risk, plaintiffs counter that they did not feel they had any option but to follow the route VBT directed them to take and claim that they did not feel that there was actually the possibility for them to ride in the van. This lingering dispute recommends against deciding on the defense of assumption of risk at the summary judgment stage.

### III.

Even with a fully-developed record before this court, determinations remain which are more properly left to a jury. Defendant VBT has not met its burden of showing that Jenkins' intervening act was so extraordinary and independent as to supersede any negligence on its part as a matter of law. The relevant law makes that burden an almost insurmountable one at the summary judgment stage. On both of the crucial questions in this case—proximate cause and assumption of risk—courts have cautioned against removing such determinations from the province of the jury. There is undeniably strong evidence that Jenkins' act of driving unlawfully due to legal blindness and possible mental deficiency, driving into cyclists when they were clearly visible and avoidable to unimpaired drivers, was *a* proximate cause of the accident. There is also room for reasonable triers of fact to infer negligence on VBT's

---

**12.** At 10 m.p.h., this would have been approximately 5 minutes of riding.

part as an additional proximate cause. Plaintiffs' motion for summary judgment making the defense of assumption of risk unavailable will also be denied because assumption of risk is a determination requiring inquiry into subjective understanding and is therefore not appropriate for summary judgment.[13]

An appropriate Order this day shall issue.

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this day

## ADJUDGED AND ORDERED

as follows

1. The court shall, and hereby does, ADOPT the United States Magistrate Judge's 6 August 1998 Report and Recommendation insofar as it recommends denying defendant VBT's motions for summary judgment and denying plaintiffs' motion for summary judgment as to VBT's defenses; defendant VBT's objections shall be, and they hereby are, OVERRULED;

2. VBT's motions for summary judgment and plaintiffs' motion for summary judgment as to VBT's defenses shall be, and they hereby are, DENIED;

3. Plaintiffs' motion for summary judgment on all issues of liability of defendant Jenkins shall be, and it hereby is, DISMISSED AS MOOT; likewise all pending motions filed by defendant Jenkins or concerning his liability shall be, and they hereby are, dismissed.

The Clerk of the Court hereby is directed to send a certified copy of this Order and the accompanying Memorandum Opinion to all counsel of record.

13. Plaintiffs also failed to object to the Magistrate's Report for its recommended disposition of its motion for summary judgment.